THE HORN AND HARDART COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35995. Promulgated June 29, 1953.

*Bernard Wolfman, Esq.*, for the petitioner.
*Stanley W. Herzfeld, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $10,851.90 in excess profits tax for 1945. The only issue for decision is whether $86,181.50, representing a credit allowed by the State of New York against the liability of the petitioner for unemployment insurance tax, represents abnormal net income attributable in part to prior years under section 721. The facts are found as stipulated and shown in exhibits.

The petitioner is a New York corporation which filed its return for 1945 with the collector of internal revenue for the third district of New York.

The New York State Unemployment Insurance Fund was inaugurated in 1936 and the petitioner, liable as an employer under the state unemployment insurance law, made annual payments to the Fund from the beginning.

The legislature of the state passed a law in 1945 providing for the first time that a surplus exists in the Fund whenever the Fund as of July 1 of any year exceeds four times the payments due from all employers during the preceding calendar year and providing further that such surplus be credited to employers against payments due in the four quarters after July 1. All employers who had been liable for and made payments to the Fund for thirteen consecutive quarters preceding January 1 of the year in which a surplus is determined become eligible for a credit. The credits are computed under a merit rating system. The amount of the credit to an eligible employer decreases if its total taxable payroll or total remuneration decreased during the three preceding calendar years and decreases also if the employer was liable for payments for less than 8 years.

The total amount in the Fund on July 1, 1945, exceeded four times the payments due from all employers during 1944. The petitioner

qualified for the maximum number of credit points and received a credit of $86,181.50 out of the July 1, 1945, surplus.

The petitioner reported the credit of $86,181.50 as income for 1945 and claimed a deduction of $240,341.36 for the total payments which it was obligated to make to the Fund during 1945.

The petitioner, in its excess profits tax return for 1945, attributed the entire credit to prior years, in proportion to its annual payments to the Fund during the years 1936 through 1944.

The Commissioner, in determining the deficiency, held that the credit of $86,181.50 "does not represent abnormal income attributable to prior years within the meaning of Section 721 of the Internal Revenue Code."

The Commissioner, in effect, concedes in his brief that the credit was abnormal income within the meaning of section 721 (a) (1) but argues that there was not net abnormal income "because petitioner's contributions to the fund in the first six months of 1945, which were deductible expenses through which the abnormal income 'was in whole or in part derived,' exceeded the abnormal income." · Abnormal income must be reduced by a portion of "any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived" in determining net abnormal income. Section 721 (a) (3). A typical direct cost or expense would be the fee of an attorney employed to obtain the credit from a resisting state authority. Here no direct costs or expenses were expended in order to derive the abnormal income. The "contributions" to the Fund were imposed as taxes, *W. H. H. Chamberlain, Inc.* v. *Andrews*, 2 N. E. (2d) 22, 271 N. Y. 1, are deductible as taxes, I. T. 3082, 1937–1 C. B. 77, and are not "direct costs or expenses" or deductible as such. They were required to be paid during the first 6 months of 1945 and at all other times under the laws of New York, regardless of whether or not any credit might develop. They contributed to the surplus but they were not direct costs or expenses through the expenditure of which the abnormal income was derived, despite the fact that the Fund on July 1, 1945, would not have exceeded four times the 1944 payments of all employers without the payments of all employers during the first 6 months of 1945.

The Commissioner next argues that "if there is net abnormal income, such income is not attributable to a year prior to 1945 because the events in which such income had its origin occurred in 1945." He refers to the inauguration of the system of credits in 1945 and to the 1945 contributions "which created the surplus as of July 1, 1945, from which the petitioner's credit was awarded." Regulations 112, section 35.721–3 provides that "Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their

origin, and only in such amounts as are reasonable in the light of such events." The payments made during the first 6 months of 1945 did not create the surplus any more than did those of earlier years. All were contributing factors to the surplus and all were events in which the abnormal income had its origin. The law declaring that there could be a refundable surplus was passed in 1945 but that is not a sound reason for failing to allocate some of the net abnormal income to prior years during which the Fund was accumulating. Somewhat analogous is the situation in which money earned in earlier years would be attributable to those years even though recovered by a judgment in a later year. Nor is the fact, relied upon by the Commissioner, that the credit could be used only to offset later required payments reason to reject allocation of a part of the net abnormal income to earlier years. There would have been no abnormal income either to allocate or to swell the excess profits tax net income if there had been no payments due during the four quarters following July 1, 1945, but that is no reason for failing to allocate where, as here, there was net abnormal income.

The final argument of the Commissioner is that any net abnormal income should be allocated only to the year 1941 and subsequent years because, he says, the credit would have been the same if the petitioner had made its first contribution to the Fund in the last quarter of 1941 instead of in 1936. This argument is fallacious. It overlooks the fact that payments to the Fund prior to the last quarter of 1941 helped to create the Fund and thus contributed to the surplus and without them the petitioner would not have received any credit.

The Commissioner has not only failed to advance any sound argument against the method of allocation used by the petitioner in its return, but he has not discussed the various methods of allocation suggested by the petitioner. The petitioner concedes in its brief that a part of the net abnormal income should be allocated to 1945 and it erred in allocating all of it to prior years. The record does not show whether there would have been a surplus in earlier years had the law been enacted earlier nor does it show whether there were later surpluses. Such information might form the basis for a good method of allocation. A part of the annual payments to the Fund is expended in the operation of the Unemployment Insurance Fund and does not go to increase the balance in the Fund. The surplus relates only to such balance. A better method of allocation than that used by the petitioner is one based upon the annual net increase in the balance in the Fund. The 1945 increase for present purposes should be limited to that which occurred up to July 1, 1945. The parties are directed to use such a method since a better one does not emerge from the present record and briefs.

*Decision will be entered under Rule 50.*