JAMES R. McGOWAN AND MARY L. McGOWAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7070–76.   Filed December 29, 1976.

---

James R. McGowan, Lester H. Salter, Harold C. Arcaro, Jr., and Alan L. Swartz, for the petitioners.*

Meade Whitaker, Dennis J. Fox, David R. Brennan, and Wayne R. Appleman, for the respondent.

OPINION

DAWSON, Chief Judge: This matter is before the Court on petitioners' Motion for Summary Judgment filed October 15, 1976, pursuant to the provisions of Rule 121, Tax Court Rules of Practice and Procedure. Since the pleadings show that there is no genuine issue as to any material fact, we may render a decision on the merits as a matter of law with respect to the issues presented.

On October 28, 1976, the Court granted a motion by the Rhode Island Bar Association Tax Committee for leave to file a brief as amicus curiae. Counsel for the respective parties were directed on that same date to file their written original or supplemental positions with respect to petitioners' motion with the Court on or before November 24, 1976, since that motion was calendared for hearing at the motions session on December 1, 1976. Pursuant to that order petitioners and the Rhode Island Bar Association Tax Committee filed a joint brief on November 22, 1976, in support of petitioners' motion.

Respondent filed a motion on November 24, 1976, seeking to have the time for filing his brief extended until December 10, 1976. That motion was granted in part by extending the time until December 3, 1976. Respondent next moved the Court on November 30, 1976, to continue the hearing date from December 1 to December 22, 1976. We granted that motion in part, over petitioners' objection, by continuing the hearing until December 8, 1976. On December 3, 1976, respondent again moved the Court to extend the time for filing his brief from that date until January 5, 1977, and to correspondingly continue the hearing date from December 8, 1976, to January

---

* A brief amicus curiae was filed by Francis J. Maguire as attorney for the Rhode Island Bar Association Tax Committee.

12, 1977. Petitioners opposed that motion. The motion was denied in its entirety on December 6, 1976, because of our belief that the impending expiration of the current tax year required a prompt resolution of the issues presented for both petitioners and other similarly situated Rhode Island taxpayers. Respondent has not filed a brief pertaining to the merits of the issue presented in petitioners' motion for summary judgment.

On December 6, 1976, respondent filed with the Court the following Notice of Concession:

RESPONDENT hereby notifies the Court that respondent concedes the issue as to whether amounts withheld from petitioners' wages for contribution to the Rhode Island temporary disability fund are deductible for the taxable year 1975. Respondent currently has under reconsideration Rev. Rul. 75-148, 1975-1 C.B. 64, the authority relied on, in part, for the denial of the claimed deduction. By reason of this concession, therefore, there is no deficiency in controversy. Since this is the only issue before the Court for decision, respondent requests the Court to enter a decision that there is no deficiency due from, or overpayment due to, the petitioners for the taxable year 1975.

Petitioners informed the Court on December 7, 1976, that they were unwilling to accept respondent's proffered concession and that, in lieu of such concession, they desired an opinion on the merits of the issue because of its recurring nature and its impact on thousands of Rhode Island employees.

The motion for summary judgment was called for hearing, as scheduled, on December 8, 1976. Counsel for respondent again indicated that respondent conceded the issue and that he was unprepared to argue its merits. Respondent contended that the controversy was terminated by virtue of his concession and that a decision of no deficiency should be entered without an opinion. The Court ruled at that time that the acceptance or rejection of a proffered concession was a matter within its discretion and that in the interests of justice respondent's concession was rejected. See and compare *LTV Corp.*, 64 T.C. 589, 591 (1975); *Ross Bowman,* 17 T.C. 681, 685 (1951); *Hisacres New Thought Center,* T.C. Memo. 1963-132. The Court then urged respondent to file a written statement of his position concerning the merits of the issue and gave him until December 15, 1976, to file such statement.

On December 15, 1976, petitioners filed a memorandum of law contending that a written opinion on the substantive issue is required. Respondent filed a Brief in Support of Petitioners' Motion for Summary Judgment, But on Different Grounds on that same date urging the validity and finality of its offer of concession. Alleging that no deficiency is in controversy by virtue of his concession, respondent asserts that in these circumstances the Court has jurisdiction to determine petitioners' motion for summary judgment only on the limited ground that respondent concedes that no deficiency exists.

Respondent determined a deficiency of $36.68 in the petitioners' Federal income tax for the calendar year 1975. Petitioner was duly notified of that decision by a statutory notice of deficiency dated July 7, 1976.

We are confronted with the following issues: (1) Whether respondent's filing of a Notice of Concession automatically deprives this Court of jurisdiction to decide the case on its merits; and, if not, (2) whether petitioner-husband's compulsory payments to the Rhode Island temporary disability insurance fund qualify for deduction under section 164, I.R.C. 1954;[1] (3) whether, in the alternative, such payments are deductible under section 162(a) as ordinary and necessary expenses incurred by the petitioner-husband while carrying on the trade or business of performing services as an employee; and (4) whether, in the alternative, such payments constitute ordinary and necessary expenses paid or incurred by the petitioner-husband for the production or collection of income within the ambit of section 212(1).

The facts are undisputed. James R. McGowan and Mary L. McGowan are husband and wife whose legal residence was Warwick, R.I., when their petition was filed in this proceeding. They previously had filed a joint Federal income tax return for calendar year 1975 with the Internal Revenue Service Center at Andover, Mass. Since Mary L. McGowan is a party to this proceeding solely by virtue of having filed a joint return with her husband, James R. McGowan alone will be referred to hereinafter as the petitioner.

---

[1] All statutory references herein pertain to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Petitioner is an attorney engaged in the practice of law in Rhode Island. Throughout the taxable year in issue he was an officer and employee of Salter, McGowan, Arcaro & Swartz, Inc., a professional service corporation established and operating according to the laws of Rhode Island. Petitioner earned wages in excess of $4,800 during 1975 in return for legal services rendered. During that same year Salter, McGowan, Arcaro & Swartz, Inc., withheld $72 from the first $4,800 of wages paid petitioner in 1975 pursuant to the mandate of title 28, chapter 40, section 1 of the General Laws of Rhode Island, as amended. That sum, representing 1½ percent of the first $4,800 paid to petitioner as wages, subsequently was paid over to the State by the corporation.

Petitioner listed that $72 withholding at the source among the itemized deductions on his joint Federal income tax return for calendar year 1975. Respondent then precipitated the instant controversy by disallowing in his statutory notice of deficiency the petitioner's claimed deduction on the grounds that:

Amounts withheld from employees' wages for contribution to the Rhode Island temporary disability fund are neither deductible as taxes under Section 164(a) nor as medical expenses under Section 213 but are nondeductible personal expenses.

Once the parties reached an impasse in their dispute over the Federal tax consequences stemming from compulsory employee payments to the Rhode Island temporary disability insurance fund, petitioner sought judicial relief by filing a timely petition with this Court and promptly moving for summary judgment as a matter of law after respondent filed his answer.

Petitioner contends that we have jurisdiction to decide the case on the merits and issue a written opinion despite respondent's attempted concession. With respect to the merits of the case, petitioner's primary argument is that the withholdings in issue represent State "income" tax payments deductible under section 164(a)(3) of the Code. He contends alternatively that (1) such payments are deductible because they fall within the "flush language" of section 164(a), and (2) that such withheld amounts qualify for deduction under section 162(a) as ordinary and necessary expenses of carrying

on the trade or business of performing services as an employee.

Respondent assumes a contrary stance by arguing that his notice of concession deprives the Court of jurisdiction over the merits of the case except for a limited power to accept his concession and enter a decision of no deficiency. His position on the merits is that the payments in question constitute nondeductible personal expenses, as stated in the statutory notice of deficiency received by petitioner. Although respondent has declined to provide us with any amplification of that position, his published statement in Rev. Rul. 75–148, 75–1 C.B. 64, is squarely on point with the issue presented by petitioner's motion for summary judgment and he acknowledged in his Notice of Concession that the deficiency determined with respect to petitioner was predicated in part upon that ruling.

### Issue 1. Jurisdiction and Discretion to Decide Conceded Issue

Initially we must determine what impact an unaccepted, unilateral, pretrial notice of concession by a party before us has on our jurisdiction to decide the case on the merits of the substantive issue. Respondent filed such a concession prior to a hearing on the merits. Petitioner, who had properly invoked the Court's jurisdiction, objected to the attempted concession even though it would serve to eliminate the deficiency previously determined, if accepted by the Court. Under the circumstances we refused to accept respondent's concession and gave him additional time to file a statement of his views on the merits of the issue presented in petitioner's motion for summary judgment. Respondent subsequently filed a brief solely for the purpose of challenging our rejection of his attempted concession and our conclusion to decide the case on its merits.

Several contentions are raised by respondent to support his claim that we erred in refusing to accept his Notice of Concession. He argues that in order for us to decide the substantive issues raised in petitioner's motion for summary judgment we will be compelled to overrule our recent opinion in *LTV Corp.*, 64 T.C. 589 (1975). It also is alleged that by deciding the case on the merits we simultaneously will be

rendering a declaratory judgment without statutory authority, 28 U.S.C. sec. 2201 (1964), and violating our previously announced policy of not ruling on years not before the Court or considering issues that may never be litigated. See *Yellow Cab Co.*, 43 T.C. 125 (1964), revd. on another issue 65–2 USTC par. 9568 (7th Cir. 1965). Respondent's position is that the Court must honor his tendered concession and cannot thereafter act upon the case in any fashion other than to enter a decision of no deficiency in accordance with the terms of that concession.

We recognize that we are traversing relatively uncharted waters by refusing to accept respondent's concession. What trepidation may once have existed has since been assuaged, however, by a perusal of the scant judicial authorities in existence and our conviction that the interests of justice will be best served by a rejection of such concession. We are convinced that our decision to reject the concession was a valid exercise of judicial discretion. A close examination of prior cases pertaining to this category of decisions illustrates that respondent's reliance upon our decision in *LTV Corp.* is misplaced because the situation presented therein is distinguishable from the situation here.

In *LTV Corp.*, 64 T.C. 589 (1975), the taxpayer claimed that consolidated net operating losses suffered during years subsequent to the taxable years in issue were sufficient to eliminate deficiencies which had been determined administratively with respect to the years in issue. Although the Commissioner conceded that no deficiencies existed during the years in issue, the Court accepted that concession, and the parties agreed to the entry of a decision of no deficiency, the taxpayer prevailed upon the Court to retain jurisdiction over the entire controversy between the parties and to settle continuing factual disputes concerning the precise computation of his net operating losses. The Commissioner objected by arguing that in light of his concession we had no jurisdiction to decide the factual issues. We ruled that a concession by the Commissioner did not impair our ability to *enter decision* for the taxpayer because we retained jurisdiction over the subject matter of the controversy, 64 T.C. at 591, but that the existence of an *accepted*, *bilateral* agreement of no deficiency covering the years in issue rendered the factual controversies

moot. Therefore, we declined to proceed further and entered decision for the taxpayer.

The most salient distinguishing feature between *LTV Corp.* and the instant case is the type of judicial discretion in issue. We are concerned with the question whether judicial discretion to accept or reject an offered concession exists, while in *LTV Corp.* we had to decide whether judicial discretion could be exercised during the postacceptance period to give the Court jurisdiction over nonessential matters. *LTV Corp.* provides us with no guidance concerning whether we must accept a tendered concession.

Respondent's contentions predicated upon the Court's lack of general declaratory judgment powers and our admitted policy of declining to rule on years not before us or our refusal to consider issues that may never be litigated are not persuasive. By virtue of our failure to accept this tendered concession we have a bona fide question before us arising out of a taxable year properly placed in issue. Only our acceptance of either the concession or an agreed joint stipulated decision would remove the matter from issue.

Neither party discussed two Memorandum Opinions of this Court which reflect our prior position on this jurisdictional point. In *Hisacres New Thought Center,* T.C. Memo. 1963–132, the Commissioner unilaterally filed with the Court complete concessions of all issues in all consolidated cases after the trial ended. The taxpayers, as here, objected to those motions, refused to join in any stipulated decision consonant with the motions, and requested the Court to decide all issues presented on their merits because of their recurrent nature. We denied the Commissioner's motions, decided the cases on their merits, and issued a written opinion concurrently with the entry of final decisions. In *Hollis C. Smith,* T.C. Memo. 1965–224, we were faced with a different situation. Due to concessions by the taxpayer at trial and the Commissioner in writing after trial, all of the original issues were resolved by the parties before the Court reached a decision on the merits. The presiding judge accepted all concessions, a discretionary act, but the taxpayers refused to join in a stipulated decision with the Commissioner because they desired a written opinion. We issued an opinion reciting the facts in the case and noting our acceptance of the parties' concessions. Each of

these cases reflects a valid exercise of judicial discretion of the type required herein as opposed to that exercised in *LTV Corp.* Neither party can forcibly remove a case from the Court's jurisdiction through the mere act of filing a concession once our jurisdiction has been properly invoked. All concessions, including stipulated settlement agreements, are subject to the Court's discretionary review. Only through this process can the interests of justice be protected. If we were to adopt respondent's position as our own, the Court's role as a viable, independent arbiter of Federal tax disputes would be undermined. In *Ross Bowman,* 17 T.C. 681 (1951), the Commissioner attempted at trial to withdraw and cancel a determined deficiency from which the taxpayer had petitioned this Court. The Commissioner alleged that we lacked jurisdiction to redetermine that deficiency because it had been determined and issued in error. We refused to dismiss that action, however, and stated (17 T.C. at 685):

> Having unquestionably obtained jurisdiction for 1943, this Court may not be ousted from that status by action of the respondent nor deprived of its right to enter a final decision with respect to the petitioner's tax liability for that year. The reason for this rule is clear. *A litigant in a matter before a court of competent jurisdiction who brings the other party into court is entitled to an ultimate judgment, and the opposing party cannot defeat the jurisdiction of the court by a waiver or disclaimer on his part.* * * * [Emphasis added.]

If we were to accept respondent's position, we effectively would be permitting him to accomplish by indirection that which we previously proscribed in *Ross Bowman, supra.*

Several factors conjoin here to dictate our rejection of respondent's offer of concession in the best interests of justice. As discussed later in this opinion, respondent first issued an administrative ruling on this question in 1943. I.T. 3607, 1943 C.B. 110. That ruling was modified in 1944 by another published ruling, I.T. 3663, 1944 C.B. 110, and remained in force for more than 30 years thereafter without further modification. Respondent abruptly reversed his position in 1975 through the issuance of Rev. Rul. 75–148, 1975–1 C.B. 64, despite the absence of any significant change in the underlying statutory provisions upon which his earlier rulings rested. This abrupt shift in position, standing alone, would not necessarily run counter to the interests of justice if it were

grounded on sound legal principles and fully explained to the inquiring public. In this instance, however, we recognize that respondent's abrupt reversal concerning the Rhode Island contributions was effected without commensurate reversals in rationale being applied with respect to a series of comparable rulings pertaining to foreign tax credits which are mentioned later.

Another factor causing us to reject respondent's offer of concession is the very language of Rev. Rul. 75–148. Not only does that ruling fail to address the primary issue presented for decision by petitioner's motion in a comprehensive manner, but its statement of position also appears invalid. Despite respondent's admission in his notice of concession that this ruling currently is being reconsidered, we are not inclined to believe that such review is being undertaken with the expedience dictated by the circumstances surrounding this case. Many taxpayers in Rhode Island will be affected by the outcome herein and the time for filing another year's return is rapidly approaching for most of them. We continuously have emphasized our desire to reach a speedy determination from the moment petitioner's motion for summary judgment was filed on October 15, 1976. Although respondent (1) reconsidered his original position in 1975 when the most recent ruling was published, (2) has been involved in a lengthy administrative dispute on this point with petitioners during 1976, and (3) has been litigating this case before us since July 26, 1976, he continues to claim as late as December 6, 1976, that more time is needed to resolve the issue administratively. Moreover, his repeated atttempts to obtain continuances have run counter to our expressed desire to quickly resolve the issue. We think the interests of justice now demand a more expeditious resolution of the issue than respondent has been willing to provide. Therefore, we conclude that our rejection of respondent's Notice of Concession represents a valid exercise of judicial discretion.

*Issue 2. Deductibility of Compulsory Contributions to
Rhode Island Temporary Disability Insurance Fund*

In 1943 the Internal Revenue Service issued I.T. 3607, 1943 C.B. 110, holding that contributions made by employees to the Rhode Island cash sickness compensation fund, collected and

paid pursuant to chapter 1200 of the Public Laws of Rhode Island (1942), were in the nature of business expenses and were deductible by an employee for Federal income tax purposes for the taxable year in which they were paid or accrued. In 1944 the Internal Revenue Service issued I.T. 3663, 1944 C.B. 110, holding that such contributions constituted "taxes" deductible under section 23(c) of the Internal Revenue Code of 1939, and thus to such extent modified I.T. 3607. These rulings remained in effect for the next 31 years. Then in 1975, without any material change in State or Federal law or case law, the Internal Revenue Service allegedly updated and restated its position in Rev. Rul. 75–148, 1975–1 C.B. 64, by holding that amounts withheld from the wages of employees for contributions to the Rhode Island[i] temporary disability insurance fund "do not qualify as any of the types of taxes specified in section 164(a) of the Code and are not paid or accrued in carrying on a trade or business," but rather are "nondeductible personal expenses under section 262."

The Rhode Island statutory scheme providing employees' temporary disability insurance is presently set out in chapters 39, 40, and 41 of the General Laws of Rhode Island (1956). Chapter 39 covers "General Provisions;" chapter 40 covers "Contributions;" and chapter 41 covers "Benefits."

Section 28–40–1 of chapter 40 reads as follows:

> Beginning January 1, 1973, each employee shall contribute with respect to employment after the date upon which his employer becomes subject to chapters 39 and 41, inclusive, of this title an amount equal to one and a half per cent (1½%) of his wages paid by his employer up to forty-eight hundred dollars ($4,800) in any calendar year.

Clearly, this mandatory "contribution" is a "tax" in the view of the Rhode Island legislature because it provided in section 28–39–2 (4):

> "Taxes" means the money payments required by chapters 39 to 41, inclusive, of this title to be made to the Rhode Island temporary disability insurance fund or to the temporary disability insurance reserve fund.

This Court has held that a similar State-mandated "contribution" to a State unemployment insurance fund constitutes a "tax." *Horn & Hardart Co.*, 20 T.C. 702, 703 (1953); *Joe W. Stout*, 31 T.C. 1199, 1213 (1959). Such cases, and others, indicate that the relief of unemployment is a recognized

public purpose, and a State-required "contribution" to a State fund to achieve that public purpose is a "tax."[2] *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495 (1937); *Rhode Island Unemployment Compensation Board v. Conway*, 77 R.I. 48, 50, 73 A. 2d 109 (1950). Such a forced "contribution" is a "tax" although paid into a special State fund from which disbursements are made only for a particular public purpose. Cf. Rev. Rul. 71–49, 1971–1 C.B. 103.

Section 164(a)(3) of the Code provides that State, local, and foreign income taxes shall be allowed as a deduction for the taxable year within which paid or accrued. In our opinion the $72 annual "tax" is an "income" tax because it was imposed at the rate of 1½ percent upon and measured by the first $4,800 of wage or salary "income" earned by the petitioner in 1975. A "tax" is an "income tax" even though it is restricted to various forms of income. Cf. *Howard v. Commissioners of Sinking Fund*, 344 U.S. 624, 627–629 (1953). Such payments of a percentage of an employee's salary are analogous to the tax on wages of employees imposed by section 3101 of the Code. Although that "tax" is not specifically described as an "income tax" in section 3101, it has been referred to as a special income tax in court decisions involving the constitutionality of Federal employment or self-employment taxes. See *Helvering v. Davis*, 301 U.S. 619 (1937); *Cain v. United States*, 211 F.2d 375 (5th Cir. 1954). In *Helvering v. Davis*, *supra* at 634–635, the Supreme Court said:

Title VIII [Social Security Act] lays another excise upon employers in addition to the one imposed by Title IX (though with different exemptions). *It lays a special income tax upon employees* to be deducted from their wages and paid by the employers. * * *

Title VIII, as we have said, lays two different types of tax, an *"income tax on employees,"* and "an excise tax on employers." *The income tax on employees* is measured by wages paid during the calendar year. * * * [Emphasis added]

In Rev. Rul. 75–148 no consideration was given to whether the compulsory contributions made by petitioner to the Rhode Island temporary disability insurance fund qualify as State "income" taxes. We hold that they do constitute deductible State "income" taxes within the meaning of section 164(a)(3).

---

[2] Sec. 28–39–38 of the Rhode Island law declares its purpose as "to lighten the burden which now falls on the unemployed worker and his family."

Unfortunately for respondent, he is hoist with his own petard because he has acknowledged in various rulings relating to foreign tax credits that a "tax" measured by an employee's wages or salary is an "income tax" for purposes of the Internal Revenue Code. See Rev. Rul. 69–237, 1969–1 C.B. 194, involving the Liberian "Austerity Tax"; Rev. Rul. 69–338, 1969–1 C.B. 194, involving an employee's social security contributions under the Venezuelan Social Security Law; and Rev. Rul. 72–579, 1972–2 C.B. 441, involving an employee's contributions under the National Insurance Act of Great Britain. Indeed, we think respondent has taken a position in Rev. Rul. 75–148 that is inconsistent with and contrary to the revenue rulings cited above. It strikes us that he has resorted to a "groundhog" approach to the problem—he has emerged from his burrow, seen the foreboding shadow of Rev. Rul. 75–148, and then retreated underground, presaging rough weather ahead.

Even if the contributions the petitioner made to the Rhode Island temporary disability insurance fund are not deductible as State "income" taxes, they would still fall within the ambit of the so-called "flush language" of section 164(a) which provides:

*In addition, there shall be allowed as a deduction* State and local, and foreign, *taxes* not described in the preceding sentence *which are paid* or accrued within the taxable year *in carrying on a trade or business* or an activity described in section 212 (relating to expenses for production of income). [Emphasis added.]

This petitioner, like other Rhode Island employees subject to this forced contribution to the State of $72 of his wages in any calendar year, was clearly engaged in carrying on a trade or business as an employee. See *David J. Primuth,* 54 T.C. 374, 377–381 (1970), and the cases cited therein.

### Issue 3. Revenue Ruling 75–148

Respondent has deliberately avoided any attempt to support the correctness of Rev. Rul. 75–148. This is not too surprising because it is our firm conviction that the revenue ruling is defective for various reasons. It erroneously holds that employees' contributions to the Rhode Island temporary disability insurance fund are not "taxes." Yet with intrinsic inconsistency it concludes that employers' (secondary or

derivative) contributions to the same fund are "taxes." It fails to consider whether the employees' contributions qualify as State "income taxes" under section 164(a)(3). It is plainly inconsistent with respondent's rulings on foreign tax credits. In concluding that such contributions are nondeductible personal expenses under section 262, it fails to give any attention to the clear holding of this Court—and respondent's own position—that an employee is engaged in a trade or business. *David J. Primuth, supra;* and Rev. Rul. 72–463, 1972–2 C.B. 93. In addition, Rev. Rul. 75–148 is fundamentally wrong in its conclusion that employees' payments under the Rhode Island law are "similar" to employees' payments under the New York law. The two laws are entirely different. And, finally, a long-standing administrative interpretation (here two rulings in existence for over 30 years), applying to a substantially reenacted statute, is deemed to have received congressional approval and has the effect of law. See *Commissioner v. Noel's Estate,* 380 U.S. 678, 682 (1965); *United States v. Correll,* 389 U.S. 299, 305–306 (1967).

All in all, we perceive no sound or rational legal basis for sustaining the validity of Rev. Rul. 75–148. In our judgment the ruling is invalid and, in fairness to thousands of Rhode Island employees, it should be revoked immediately. To let linger the uncertainty created by respondent's inaction would show a careless and callous disregard of the rights of these individuals. They seek a definitive answer. They are entitled to have it.

Accordingly, we will grant petitioners' motion for summary judgment.

*An appropriate order and decision will be entered.*