NORMA J. RITCHIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ritchie v. Commissioner
Docket No. 6283-78.
United States Tax Court
T.C. Memo 1979-492; 1979 Tax Ct. Memo LEXIS 36; 39 T.C.M. (CCH) 664; T.C.M. (RIA) 79492; December 6, 1979, Filed *36 Both former spouses claimed entitlement to the exemption deductions with respect to their children. Petitioner was the custodial parent. Held: Petitioner has shown by a clear preponderance of the evidence that she provided more for the support of the children than did her former husband. Held further: Petitioner is entitled to the exemption deduction in issue. Sec. 152(e), I.R.C. 1954. Homer R. Miller, for the petitioner. Joyce H. Errecart, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By letter dated March 31, 1978, respondent determined a deficiency in petitioner's income taxes paid for her taxable year ended December 31, 1974 in the amount of $418.72. The only issue herein is whether petitioner is entitled to certain dependency exemption deductions. FINDINGS OF FACT Some of the facts have been *38 stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time she filed her petition herein petitioner Norma J. Ritchie resided in Adelphi, Maryland. Petitioner filed her cash basis individual Federal income tax return for her taxable year 1974 with the Philadelphia Service Center of the Internal Revenue Service. Petitioner was formerly married to Willard T. Ritchie (Willard). Three children were born of the marriage: Deborah, born November 16, 1956; Patricia, born 1958; Kathleen, born 1964. On June 29, 1971 petitioner and Willard executed a separation agreement. This agreement provided in relevant part as follows: 2. The Husband agrees to pay to the Wife, for the support and maintenance of the minor Children, the sum of One Hundred, Twenty-Five and no/100's ($125.00) Dollars per week. As each Child attains her majority, marries, becomes self-supporting, or is otherwise emancipated, or upon the death of the Husband, whichever shall first occur in point of time, the obligation of the Husband for support payments for that particular Child shall cease, and in this regard, the total weekly payment *39 to be made on account of support and maintenance shall be decreased by Forty-One and Thirty-Three/100's ($41.33) Dollars per week as each Child attains her majority/or is otherwise emancipated. The Husband shall be entitled to claim all Children as dependents for tax purposes. Paragraph 16 of the separation agreement provided that the agreement could be merged into any later decree of divorce on the option of either party. On September 29, 1971 petitioner filed a petition in the Montgomery County Circuit Court claiming that Willard was in arrears in his payments under their agreement. On February 14, 1972 the circuit court ordered Willard to pay child support of $125 per week plus certain arrearages. On November 30, 1972 the circuit court issued an order reducing petitioner's total weekly child support obligation to $82.50. On June 1, 1973 the circuit court entered a Decree of Divorce. This Decree ordered that Willard pay $82.50 per week to petitioner for the support of the parties' children "pursuant to the order of this Court dated November 30, 1972." Neither party every exercised his option to merge their separation agreement into this Decree. Prior to their divorce petitioner *40 and Willard owned a home located on Adelphi Road in Adelphi, Maryland (hereinafter the Adelphi road house). The fair rental value of this house, unfurnished, was $4,050 per year during 1974. Paragraph 4 of the couple's separation agreement provided as follows with respect to this house. 4. * * * the Wife shall have exclusive right of possession in and to this real property, and agrees hereby to be responsible for all payments on this property, as they become due, including, but not limited to, house payments, and sums due for utilities, upkeep and maintenance. The Husband and Wife will share equally in the annual payment of real estate taxes as they become due. At such time as the Wife wishes to place the house for sale, she may do so. However, the house shall be sold at such time as the Wife remarries or when the youngest child is emancipated, whichever shall first occur, s set forth in Paragraph 2 above. The Wife shall be solely responsible for repairs and improvements. Willard provided cash child support payments in the amounts of $3,367.50 in 1972 and $4,221.54 in 1973. During 1972 and 1973 petitioner and the couple's three children resided in the Adelphi Road house. *41 In 1974 Willard provided cash child support payments pursuant to the Decree of Divorce consisting of 51 payment of $82.50 each or $4,207.50. In total Willard provided $4,399.50 for the support of his children in 1974 or $1,466.50 for each of his three daughters. In 1974 petitioner spent $3,105.50 in general expenses for each daughter for a total of $9,316.50: 1974 Expenditures per child
Amont
Food $ 500.00
Utilities
300.00
Clothes
300.00
Drugs
50.00
Recreation
175.00
Car maintenance
14.00
Car and house insurance
70.00
Books and magazines
4.00
Car payments
130.00
Doctors
250.00
Car operation
180.00
Dry cleaning
6.00
Veterinarian
14.00
Birthday and Christmas
100.00
Fair rental value of Adelphi Road House
1,012.50
$3,105.50
In addition petitioner spent the following amounts which were specifically allocable to the daughters shown: Deborah $1,500, Kathleen $150, and Patricia $140. In 1974 all three girls were in the custody of petitioner and resided at the Adelphi Road house. At various times one or more of the girls were employed in part-time jobs. Patricia and Deborah each earned $320 in 1974. In 1975 Patricia earned $320 *42 and Debora earned $884. All the children received at least half their support from their parents during the taxable year in issue. OPINION The only issue for our decision herein is whether petitioner is entitled to any or all of the dependency exemption deductions for her three daughters for the taxable year in issue. At all relevant times section 151 provided as follows: SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions.--In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * *
(e) Additional Exemption for Dependents.-- (1) In General.--An exemption of $750 for each dependent (as defined in Section 152)-- * * *
(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. At all relevant times section 152 provided as follows: SEC. 151. DEPENDENT DEFINED. (a) General Definition.--For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar *43 year in which the taxable year of the taxpayer begins, was received from the taxapayer (or is treated under subsection (c) or (e) as received from the taxpayer): (1) A son or daughter of the taxpayer * * *, * * * (e) Support Test in Case of Child of Divorced Parents, Et Cetera.-- (1) General Rule.--If-- (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced * * * and (B) such hild is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as ireceiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent * * *. (2) Special Rule.--The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if-- (A)(i) the decree of divorce or of separate maintenance, or a written agreement between *44 the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any deduction allowable under section 151 for such child, and (ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or (B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support. Clearly the special rules of section 152(e)(2)(A) and (B) require that we hold against petitioner, as the custodial parent, unless petitioner can show that the separation agreement does not apply to provide the deduction to Willard, and unless she can show by a clear *45 preponderance of the evidence that she provide more for the support of each of her daughters than did Willard. On brief petitioner appears to argue three points: (1) that the terms of paragraph 2 of the property settlement agreement should not apply to grant Willard the exemption in issue, (2) that she has clearly established that she supplied more for the support of each child than did Willard in 1974 within the meaning of section 152(e)(2)(B) so that the general rule of section 152(e)(1) should apply, and (3) that portion of Willard's payments for 1974 should be allocated to his arrearages for 1972 and 1973 and, therefore, should not be counted as support payments for 1974. Respondent, who acted as a stakeholder as between petitioner and Willard (whose case has also been decided this day), argues primarily that petitioner has decided this day), argues primarily that petitioner has carried her burden and should be allowed the exemptions. In the alternative respondent argues that we should find against petitioner if we find for Willard on his section 152(e)(2)(B) claim. [1]
Given respondent's primary position, *46 we do not interpret him to seriously argue that the separation agreement should apply to deny petitioner the exemptions at issue. We therefore, need not reach that issue. As we believe petitioner has clearly established that she provided more for the support of each of her children in 1974 than did Willard, we also do not reach petitioner's default claim. But see section 1.152-1(a)(2)(iii), Income Tax Regs.
We have found that Willard provided in excess of $1,200 support per child during the taxable year in issue. We believe, however, that a clear preponderance of evidence indicates that petitioner spent more for the support of each child than did Willard during the taxable year before us. Applying principles analogous to those stated in Cohan v. Commissioner, 39 F.2d 540, 544 (2nd Cir. 1933), we have allowed some of petitioner's claimed support expenses in full and have allowed others only partially or not at all. In determining the total amount of support provided by Willard to his children, we have taken into account only such money orders as were actually mailed during the taxable year plus any such cash payments that Willard was able to show. Thus, for *47 example, some money orders were dated in 1974 but were not mailed until 1975. The fact that Willard may have been obligated to pay an amount in 1974 for his children's support does not automatically require that that amount be included as a support payment in that year. Rather the test is the year in which the support was actually received from the taxpayer. Seraydar v. Commissioner, 50 T.C. 756, 761 (1968). Clearly, Willard could not have provided an amount for the support of his children, and his children could not have received any amount from his for their support, until he actually imailed or otherwise paid the amount. [2] Of course, to the extent Willard actually paid amounts for his children's support, each payment is deemed made for each child's benefit equally, absent some evidence to the contrary. Kotlowski v. Commissioner, 10 T.C. 533, 536 (1948). *48 We concluded that in 1974 petitioner spent $4,605.50 for Deborah's support, $3,255.50 for Kathleen's support, and $3,245.50 for Patricia's support. These amounts must be treated as received from Willard to the extent that he provided support for each child. Section 152(e)(2), section 1.152-4(d)(4), Income Tax Regs. Thus in 1974 each parent is deemed to have provided the following amounts for support: 1974
Petitioner
Willard
Deborah
$3,139
$1,466.50
Kathleen
1,789
1,466.50
Patricia
1,779
1,466.50
Petitioner has clearly established that she provided more support to each of the couple's children in her taxable year 1974 than did Willard. We have already found that the children's parents provided more than one half their children's support during the taxable year in issue. Since the special rules of section 152(e)(2) do not apply and as petitioner is the custodial parent, she is entitled to the exemption deductions. Section 152(e)(1). Decision will be entered for Petitioner. Footnotes
1. See Ritchie v. Commissioner, T.C. Memo 1979-493↩.
2. We note that the parties hereto incorrectly stipulated that "petitioner received 49 money orders" in 1974. They also stipulated that "petitioner received 53 money orders" in 1975. At the same time, both parties agreed that all the evidence introduced in Willard's case should be deemed introduced in this case. The evidence in Willard's case clearly shows that he mailed, and petitioner received, 51 money orders in 1974. We are at a loss to understand this discrepancy. We note, however, that all concessions, including stipulated settlement agreements are subject to the Court's discretionary review. McGowan v. Commissioner, 67 T.C. 599, 607↩ (1976). When the parties have stipulated to facts which are mutually exclusive, the Court's duty to find the facts accurately becomes all the more important. We also note that the taxable year 1975 is not before us herein.