T.C. Memo. 2012-266

UNITED STATES TAX COURT

CIGNA CORPORATION AND CONSOLIDATED SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13645-09.                    Filed September 13, 2012.

<u>Susan E. Seabrook</u>, <u>Bernard J. Williams, Jr.</u>, <u>Melissa L. Galetto</u>, <u>Alan J.J.</u>
<u>Swirski</u>, and <u>Cynthia S. Frank</u>, for petitioner.

<u>John M. Altman</u>, <u>Diane Deborah Helfgott</u>, and <u>Gary D. Kallevang</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $10,724,375 deficiency in
petitioner's Federal income tax for 2004.  This deficiency stems from respondent's

[*2] determination that petitioner, a life insurance company,[1] improperly computed its tax reserves for certain reinsurance treaties.[2] Respondent has since conceded that there is no deficiency, and the parties stipulated that respondent accepts petitioner's tax reserve computations.[3] The parties still dispute as a matter of law whether petitioner may compute its tax reserves under section 807[4] by using a reserve method adopted after the treaties were executed (tax reserve issue). Petitioner urges us to decide the tax reserve issue. Respondent counters that an opinion addressing the tax reserve issue would be advisory in light of the stipulation. We must decide whether we will exercise our discretion to resolve the tax reserve issue. We decline to do so.

---

[1]Cigna Corporation is global health service and financial company. It is the common parent of an affiliated group of corporations that filed a consolidated Federal income tax return for 2004. Connecticut General Life Insurance Company was a member of petitioner's group and entered into the reinsurance treaties at issue. For convenience, we refer to Cigna Corporation and CGLIC collectively as petitioner.

[2]A reinsurance treaty is a contract between one insurance (or reinsurance) company, known as the ceding company, and another insurance company, known as the reinsurer.

[3]The parties agree that a Rule 155 computation will be necessary regardless of whether petitioner or respondent prevails.

[4]All section references are to the Internal Revenue Code (Code), and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

## [*3] FINDINGS OF FACT

The parties have stipulated some facts. We incorporate the stipulation of facts and the accompanying exhibits by this reference. Petitioner's principal place of business was in Pennsylvania when it filed the petition.

I. Petitioner's Reinsurance Treaties and Statutory Reserves

Petitioner is a life insurance company. As relevant here, petitioner entered into treaties to reinsure[5] (reinsurance treaties) minimum guaranteed death benefits (MGDB).[6] The reinsurance treaties were entered into before 1998.

Life insurance companies are required under State law to set aside capital equal to the present value of the future claims arising from insurance policies (statutory reserves).[7] The method for computing reserves (reserve method) depends on the type of insurance product and related risk involved.

The Connecticut Department of Insurance (CDOI) regulated the reinsurance treaties. CDOI required petitioner to maintain statutory reserves for the

---

[5]Under a reinsurance treaty, a reinsurer agrees to assume a specified portion of the risk borne by the ceding company under its insurance contracts. The amount and nature of the risk assumed are determined by the terms of the reinsurance treaty with the ceding company.

[6]MGDB are ancillary benefits that may be incorporated into annuities.

[7]Statutory reserve computation methods may vary by jurisdiction.

**[*4]** reinsurance treaties.  CDOI issued guidance to compute MGDB statutory reserves, including for the reinsurance treaties.  A universally accepted reserve method for computing MGDB statutory reserves did not exist before 1998.

The National Association of Insurance Commissioners (NAIC) is an organization with the goal of coordinating the regulation of multistate insurers.  To that end, the NAIC promulgates model rules and actuarial guidelines in an effort to standardize insurance laws.  The NAIC promulgated Actuarial Guideline XXXIV (AG 34), effective December 31, 1998.  AG 34 is a reserve method that applies to MGDB.

## II.  Tax Reserve Issue

A life insurance company must compute its reserves for Federal income tax purposes (tax reserves).[8]  The applicable reserve method under the Code for tax reserves may differ from the applicable reserve method for statutory reserves.  See sec. 807.  In certain circumstances, the Code allows an insurer to use the NAIC-prescribed reserve method applicable to statutory reserves to compute its tax reserves.  See sec. 807(d)(3).

---

[8]An insurance company computes its tax reserves by using the interest rate, the mortality or morbidity rate and the prescribed tax reserve method.  Sec. 807(d)(2).

**[\*5]**  In 1999 petitioner began using AG 34 as the reserve method to compute its tax reserves for the reinsurance treaties, and it did so through 2008.[9]  Petitioner timely filed Forms 1120L, U.S. Life Insurance Company Income Tax Return, for 2004.  Respondent issued petitioner a deficiency notice for 2004, determining that petitioner could not use AG 34 to compute the tax reserves because AG 34 was not in effect when petitioner entered into the reinsurance treaties.  As a result, respondent determined that petitioner's tax reserves should be decreased by $43,466,544 for 2004, thereby increasing petitioner's income.[10]

III.  Procedural History

Petitioner timely filed a petition with this Court.  Respondent conceded before trial that there was no deficiency stemming from petitioner's tax reserves for the reinsurance treaties.  Respondent consequently moved to enter a decision in petitioner's favor.  Petitioner opposed the motion because the concession did not resolve the tax reserve issue.  We denied the motion.

---

[9]Petitioner used a different reserve method to compute its tax reserves before 1999.

[10]A net decrease in tax reserves is considered gross income.  Secs. 803(a)(2), 807(a).  A deduction is allowed for a net increase in tax reserves.  Secs. 805(a)(2), 807(b).

**[\*6]**    Petitioner and respondent thereafter filed a stipulation of facts.  The parties stipulated that respondent conceded the adjustment in the deficiency notice. Further, the parties stipulated that petitioner's tax reserve computations are correct. The parties still dispute, however, whether petitioner may as a matter of law use AG 34 to compute tax reserves for the reinsurance treaties that predate AG 34. Respondent contends that petitioner must continue to use the reserve method in effect at the time the reinsurance treaties were entered into, not some method adopted later that applies retroactively.  Petitioner contends that the Code permits it to use AG 34 as the reserve method for the reinsurance treaties even though it was adopted after the reinsurance treaties were entered into.

The case proceeded to trial.  Respondent emphasized that the stipulation rendered the case moot.  And petitioner acknowledged that the parties agree petitioner's tax reserve computations were correct.  Respondent accepted petitioner's tax reserve computations for every year petitioner used AG 34.[11]  The only controversy was the tax reserve issue.

---

[11]The parties indicated that petitioner used AG 34 to compute the tax reserves for the reinsurance treaties through 2008.  Respondent issued another deficiency notice for 2005 and 2006.  See Cigna Corp. v. Commissioner, Docket No. 21542-11.  The taxpayer (petitioner here) filed a petition in that case.  The Commissioner similarly conceded the deficiency in his answer.

## [*7] OPINION

We must decide whether we should resolve the tax reserve issue when the parties agree that the tax reserve computations are correct and that there is no deficiency. Petitioner asserts we should resolve the tax reserve issue because it is critical to the life insurance industry. Respondent contends that we should not resolve that tax reserve issue because doing so would be to render an advisory opinion.

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. See Naftel v. Commissioner, 85 T.C. 527, 529-530 (1985). A timely filed petition for the redetermination of a deficiency confers jurisdiction on us. Sec. 6214. Our jurisdiction generally remains unimpaired until the Court has decided the controversy. Naftel v. Commissioner, 85 T.C. at 529-530. The Commissioner conceding the deficiency does not deprive us of jurisdiction. LTV Corp. v. Commissioner, 64 T.C. 589 (1975).

It rests within our discretion to issue an opinion on the merits even where the Commissioner concedes that there will be no deficiency for the years before the Court. See Martin v. Commissioner, 90 T.C. 1078, 1082 n.9 (1988), aff'd, 877 F.2d 449 (6th Cir. 1989); Connelly v. Commissioner, 82 T.C. 608, 609 (1984);

**[*8]** Jones v. Commissioner, 79 T.C. 668, 673 (1982); McGowan v. Commissioner, 67 T.C. 599, 608 (1976); LTV Corp. v. Commissioner, 64 T.C. at 597.

We are guided, however, by the principle of judicial administration that a court will not gratuitously decide complex issues that cannot affect the disposition of the case before it. LTV Corp. v. Commissioner, 64 T.C. at 595; see also Van Roekel v. Commissioner, 905 F.2d 80 (5th Cir. 1990), remanding per curiam T.C. Memo. 1989-74; Chevron Corp. v. Commissioner, 98 T.C. 590, 592-593 (1992); Cooper v. Commissioner, T.C. Memo. 2010-214; Griffin v. Commissioner, T.C. Memo. 1995-246. Resolving a moot issue amounts to rendering an advisory opinion. See Greene-Thapedi v. Commissioner, 126 T.C. 1, 13 (2006); Kersh v. Commissioner, T.C. Memo. 2009-260; Livingston v. Commissioner, T.C. Memo. 2000-121; Grynberg v. Commissioner, T.C. Memo. 2000-15 (not deciding disputed legal issue that could be subject of future litigation because no impact on years at issue).

Respondent contends that the stipulation settles petitioner's tax liability for 2004 completely. He asserts that we should not address the legal issue. See LTV Corp. v. Commissioner, 64 T.C. at 595-596. In that case, the Commissioner conceded the deficiency but did not concede the legal issue. Id. at 592. The

[*9] taxpayer asked us to address a disputed legal issue because the taxpayer believed the same issue might arise in subsequent years. Id. Those years, however, were not before the Court. Id. We declined to address the legal issue because the concession afforded the taxpayer a complete victory. Id. at 595. We found that a substantive decision would be an advisory opinion affecting years not before the Court. Id. at 595-596.

That conclusion was based on judicial administration concepts, including ripeness, mootness and advisory opinions. Chevron Corp. v. Commissioner, 98 T.C. at 593. Those concepts guide a court to not decide an issue though the court maintains jurisdiction to do so. Id. Here, an opinion addressing the tax reserve issue would be advisory. Respondent has conceded the deficiency, and the parties have since stipulated that petitioner's tax reserve computations are correct. Our opinion would not affect the outcome in this case.

Petitioner suggests the "interests of justice" entitle petitioner and other taxpayers to an opinion resolving the tax reserve issue. See McGowan v. Commissioner, 67 T.C. at 604, 608. We disagree. In McGowan we were asked to decide whether a compulsory employee contribution constituted a State income tax that the taxpayer could deduct. Id. at 602. The Commissioner conceded the deficiency and asked us to enter a decision in the taxpayer's favor. Id. We

**[\*10]** rejected the concession and issued a substantive opinion at the taxpayer's request. Id. at 608. The interests of justice compelled us to issue the substantive opinion. See id. at 607. First, unlike here, we found that the unresolved issue would arise in the upcoming tax year for thousands of taxpayers. Id. at 601, 608. A substantive opinion would consequently alleviate confusion in an area that lacked clarity. Second, the taxpayer rejected the unilateral concession in its entirety. Id. at 606.

The present circumstance is different. First, the tax reserve issue is a discrete legal issue involving a specific insurance product. We are not convinced that resolving the legal issue will alleviate uncertainty for thousands of taxpayers. Further, respondent has represented that he will not challenge petitioner or other taxpayers that used AG 34 to compute tax reserves for MGDB. Second, petitioner still pursues a substantive ruling after the stipulation ensured a complete and total victory in its favor. See Jones v. Commissioner, 79 T.C. at 673; Greenlee v. Commissioner, T.C. Memo. 1985-218. This is no longer a situation where petitioner opposes a concession.

We are mindful that petitioner desires resolution of the tax reserve issue. This is not the case, however, to decide that issue given respondent's concession. The possibility that a substantive ruling may provide clarification for petitioner or

**[\*11]** other taxpayers is insufficient to disregard judicial principles. Our opinion would address a moot issue and provide guidance only for analogous circumstances. It would not even affect petitioner's tax reserve computations for future years because respondent has conceded all future years with respect to the reinsurance treaties. In short, it would be an advisory opinion. We will accept the stipulation and enter a decision under Rule 155.

In reaching these holdings, we have considered all of the parties' arguments, and, to the extent not addressed here, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.