THE LTV CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7688-71.    Filed July 21, 1975.

*Neil J. O'Brien, Gene Emery, Ronald R. Cresswell, Allen Sparkman,* and *Jimmy L. Heisz,* for the petitioner.

*John W. Dierker,* for the respondent.

## OPINION

WILBUR, *Judge:* Respondent has determined deficiencies in petitioner's income tax for the taxable years 1965 and 1966 of $3,735,081.11 and $7,622,261.09. In its petition for redetermination, petitioner alleged numerous errors on the part of respondent, including the disallowance of consolidated net operating losses of $16,981,402, for petitioner's taxable year 1968 and of $62,354,518, for petitioner's taxable year 1969. Respondent's answer denied the existence of any net operating loss for 1968 and 1969.

While the parties continue to disagree on the magnitude of the 1968 and 1969 losses, respondent now admits that there are sufficient consolidated net operating losses from 1968 and 1969 to completely eliminate any deficiency for 1965 and 1966, and has unequivocally conceded that there are no deficiencies due for these years.

Respondent contends that in view of his concession, this Court's jurisdiction is limited to entering a decision of no deficiency in accordance with the agreement of the parties, and that section 6214 [1] deprives this Court of jurisdiction to consider facts relating to the 1968 or 1969 consolidated net operating losses. Additionally, even if it should be determined that his concession is without jurisdictional significance, respondent argues that his concession of no deficiency for 1965 and 1966 (the only years for which a deficiency notice has been issued) eliminates any controversy relating to the redetermination of a

---

[1] All references are to the Internal Revenue Code of 1954, unless otherwise indicated.

deficiency, and that we should simply enter a decision of no deficiency for petitioner.

Petitioner argues that the filing of a timely petition for the redetermination of a deficiency gives this Court jurisdiction, and that subsequent actions of the parties, including a concession on all or some of the issues, does not deprive this Court of jurisdiction. Additionally, petitioner argues that respondent's concession of no deficiency for the years before the Court, does not eliminate the controversy dividing the parties. Petitioner notes that the impact of the present controversy on future years, as well as the substantial interest associated with the pre-carryback deficiencies, provides the parties with a real stake in a present controversy involving concrete issues ripe for decision. Petitioner also emphasizes the adverse impact on financial planning and access to the financial markets that continued uncertainty over substantial tax liabilities imposes.

Petitioner filed a motion for a pretrial conference and order sustaining this Court's jurisdiction to avoid extensive preparation for a trial that may, if the Court sustains the position of the respondent, be unnecessary. Subsequent to the pretrial conference the parties filed briefs in support of their respective positions.

We agree with petitioner that respondent's concession of no deficiency does not deprive us of jurisdiction over the subject matter. It would be anomalous in the extreme if respondent's concession on the merits deprived the Court of jurisdiction to enter a decision in favor of petitioner. As we said in *Daniel E. Hannan*, 52 T.C. 787, 791 (1969):

it is not the *existence* of a deficiency but the Commissioner's *determination* of a deficiency that provides a predicate for Tax Court jurisdiction. * * * Indeed, were this not true, then the absurd result would be that in every case in which this Court determined that no deficiency existed, our jurisdiction would be lost.

Having acquired jurisdiction, this Court has the authority and responsibility to enter a decision on the merits. *Ross Bowman*, 17 T.C. 681 (1951).[2]

It is true that section 6214, after directing us to redetermine the deficiency before us by referring, to the extent necessary, to facts relating to other years, specifically denies us "jurisdiction to determine whether or not the tax for any other year * * * has been overpaid or underpaid." But section 6214(b) simply makes

---

[2] See also *In re Metropolitan Railway Receivership*, 208 U.S. 90, 108 (1908).

unmistakably clear what is contemplated by the jurisdiction conferred in section 6214(a) and the two preceding sections: that this Court's jurisdiction is limited to a redetermination of the correct amount of the deficiency, if any, for the years for which the deficiency notice specified in section 6212 has determined a deficiency as defined in section 6211.[3]

We must look at the facts relevant to the years before us even if these facts relate to taxes for other taxable years. Respondent's concession as to the facts bearing on the correct amount of the tax liability does not diminish our jurisdiction, but goes only to the merits of the controversy, even where the facts involved relate to the taxes of other taxable years. In this, as in other instances involving concessions by either party, the Court retains jurisdiction to redetermine the correct amount of the deficiency.

Having decided that our jurisdiction is unimpaired by respondent's concession of no deficiency (which we accept), we must decide whether we should simply enter a decision for petitioner, or whether we should nevertheless determine the correct amount of the pre-carryback deficiencies, if any, for 1965 and 1966, the precise amount of the consolidated net operating losses attributable to 1968 and 1969, and the amount of the 1968 and 1969 losses that must be used to eliminate any such deficiencies.

Petitioner argues that the 1968 and 1969 losses, not absorbed by the 1965 and 1966 deficiencies, will be carried to the years 1973 and 1974, thus requiring a determination of all the issues currently before the Court at some future date. Petitioner emphasizes the convenience of resolving these issues now when witnesses are available and memories fresh, rather than in connection with 1973 and 1974, which (given the complexity of the returns involved) may not reach the litigation stage until 1980. Petitioner urges that the parties have a real stake in a concrete controversy in view of the impact any decision is likely to have on future years, and also because of the substantial interest associated with any pre-carryback deficiency for 1965 and 1966.[4] Petitioner notes that if we do not resolve the issues for

---

[3] Additionally, jurisdiction to determine an overpayment is provided by sec. 6512(b).

Sec. 6214 was originally enacted in virtually identical form by sec. 274(g) of the Revenue Act of 1926. While probably referring to net operating loss deductions (first temporarily provided by sec. 204 of the Revenue Act of 1918 and expanded on a permanent basis by sec. 204(b) of the Revenue Act of 1921), the legislative history is singularly unenlightening. See H. Rept. No. 1, 69th Cong., 1st Sess., 1939-1 C.B. (Part 2) 315, 322.

[4] See secs. 6601(e)(1) and 6611(f)(1).

1965 and 1966, they will be resolved in a refund suit over restricted interest, resulting in a multiplicity of litigation in different forums. Finally, petitioner points out that the failure to resolve the issues now is inconsistent with the mechanical steps for computing a net operating loss carryover and will impose substantial uncertainties undermining corporate financial planning.

Respondent argues that in view of his concession of no deficiency, resolution of these issues will have no impact on the years before the Court, but will be merely an advisory opinion concerning the amount of a deduction (that may or may not be needed) for future years over which the Court has no present jurisdiction. He argues that any existing controversy over the pre-carryback deficiencies or the size of the losses for 1968 and 1969 has been mooted by his concession. While he acknowledges that interest computations are predicated on the deficiency redetermined by the Court, he points out that this is an indirect consequence of the exercise of our jurisdiction over deficiencies, and that we clearly do not have jurisdiction over interest.

Although the issue is not as free from doubt as it at first appears, we have determined that we should enter a decision in favor of petitioner rather than continue these proceedings. Our responsibility is limited to redetermining the deficiency asserted for the years before us. If the respondent predicates a deficiency on understated income or overstated deductions (or some combination of the two) and the taxpayer claims that either additional depreciation, interest, or business expenses eliminate the asserted deficiency, the respondent's concession that any of these deductions (either alone or in combination) exist in sufficient magnitude to eliminate the deficiency results in a decision of no deficiency (if we accept respondent's concession, as we do here). We do not nevertheless determine whether all of the claimed deductions are available, or whether the claimed deductions (either alone or in combination) are actually in excess of the deficiency determined.

Since the net operating loss deduction provided by section 172 is simply one of the deductions provided by chapter 1 of subtitle A, it is difficult to see why the decision should be different here.[5]

---

[5] Petitioner agrees that the net operating loss deduction is "a 'deduction' like any other-interest, business expense, and the like." However petitioner asserts that the 1968 loss must (after being partly absorbed by any 1965 deficiency) be applied to 1966 before the 1969 loss can be considered. The mechanics of the carryback and carryover procedure, according to this reasoning, require a determination of the loss for 1968 and the pre-

It is unnecessary to determine which of the parties is correct as to specific deduction and income items making up their respective computations. The result is the same in either case: the deficiency as redetermined for the years before us is zero.

While the precise issue we decide does not appear to have been adduced in the context of the fact pattern before us, we are not without guiding principles. In *California v. San Pablo & Tulare Railroad Co.,* 149 U.S. 308 (1893), the Court was asked to rule on the constitutionality of a California property tax applied to the value of railroad property unreduced by an outstanding mortgage, when the same tax was applied to other taxpayers by reducing the value of the property by an outstanding mortgage. The issue was involved in other pending cases, would affect taxpayers in future years, and an answer was important to the State of California "so it may be known, when these assessments are made, whether they can be included in the sources of revenue that can be relied upon in the administration of the government of that State." 149 U.S. at 313. The defendant tendered to the plaintiff the taxes due, which were not accepted, but deposited in a bank pursuant to a California statute providing that under these circumstances an obligation for the payment of money is extinguished by a due offer of payment. In dismissing the writ of error, the Supreme Court stated:

the State has obtained everything that it could recover in this case by a judgment of this court in its favor. The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. *But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.* * * * [149 U.S. 308, 314; emphasis added.] [6]

We, of course, do not have jurisdiction to render a monetary judgment, but simply determine the amount of the deficiency or overpayment. *Burns, Stix Friedman & Co.,* 57 T.C. 392, 396

---

carryback deficiency for 1965. We believe that sec. 172(a), providing for a net operating loss deduction equal to the *aggregate* of the carryover and carryback losses answers this argument. Both parties, while pointing to different figures, agree that the deduction provided by sec. 172(a) for each of the years in issue is *at least* equal to the deficiencies determined.

6 See also *Oil Workers Union v. Missouri,* 361 U.S. 363, 367 (1960).

(1971). The only issue before us is the deficiency determined by respondent for 1965 and 1966. A decision of no deficiency in accordance with respondent's concession provides a complete victory for petitioner; a continuation of the proceedings "cannot affect the result as to the thing in issue" in this case, and can add nothing other than an advisory opinion declarative of the size of a deduction petitioner may be able to use in some future years.

It will add little to the conclusion reached to enter into an extended discussion of the subtle concepts of justiciability,[7] and the various categories of nonjusticiable issues.[8] Most of the categories (including ripeness, mootness, and advisory opinions) overlap and blur on analysis, but for the most part reflect a sound principle of judicial administration that courts will not gratuitously decide complex issues that cannot affect the disposition of the case before them. We are confident that this principle applies to the particular facts of the case before us.[9]

The courts have developed "doctrines of judicial administration that permit a court to decline decision though not precluded by a jurisdictional bar from consideration of the matter." *Alton & So. Ry. Co. v. International Assn. of Mach. & A.W.,* 463 F.2d 872, 877 (D.C. Cir. 1972). See *California v. San Pablo & Tulare Railroad Co.,* 149 U.S. 308, 314 (1893); 13 Wright, Miller & Cooper, Federal Practice and Procedure, sec. 3529 (1975). The controversy precipitating the litigation before us concerns the deficiency determined for the years 1965 and 1966. The years 1968 and 1969 were in issue solely as they relate to this controversy, and this controversy has been resolved by respondent's concession.

Petitioner points out that a decision relative to the pre-carryback deficiencies determined for 1965 and 1966, and the

---

[7] "It seems intrinsically unlikely that judgments so tightly bound to the particular issues tendered for decision can ever be satisfactorily explained in terms of general principles that are more than conclusory." 13 Wright, Miller & Cooper, Federal Practice and Procedure 152 (1975).

[8] "There is no reason to demand a final expression in terms of standing, ripeness, mootness, or political question doctrine, if the court is able to conclude that there is no sufficient need for deciding the issues rendered without relying on the frequently question-begging terminology of any single concept." *Id.* at 153.

[9] It is understandably difficult to find precedent directly applying so self-evident and general a principle to similar facts, and we claim no success. We note however that our views are consistent with the implications of *Robert W. Adams,* 58 T.C. 41, 61 (1972) (since the *size* of the net operating loss directly affected the deficiency in the years before the Court, the income of the loss year examined). See also *Edward G. Leuthesser,* 18 T.C. 1112, 1122, 1123 (1952). See also Restatement of Judgments, sec. 68(1) and comment (o) (1942).

size of the net operating losses in 1968 and 1969, will determine the amount of losses remaining in 1968 and 1969 to be carried to future years, and that it would be more timely to resolve these issues now. But such a determination would in any event relate to a deduction that may be used in some future year, and would provide no assistance in resolving the deficiencies in the years before us.

Petitioner had losses in 1970, 1971, and 1972, but apparently had some income in 1973 before applying net operating loss deductions. The picture for 1974 is not yet clear. Given the magnitude of the losses petitioner incurred in the late sixties and early seventies, the manner of sequencing these losses, and the limited carryover period provided for in the Internal Revenue Code, there may be sufficient agreed losses, given the occurrence of subsequent events that are still unfolding, to obviate the necessity of ever litigating any of the issues relative to 1965, 1966, 1968, or 1969.[10] Even if the size of the remaining 1968 and 1969 loss becomes a potential issue in a subsequent year (for example, 1974, the last year to which the 1969 loss may be carried), there may be subsequent losses (in 1975, 1976, or 1977 in the case of 1974) that would then obviate the necessity of any litigation.

There is simply no assurance that if we resolved all of the issues continuing to divide the parties that it will ever affect the tax liability of petitioner in any year—past, present, or future.[11] And one thing is crystal clear: no matter what we might decide, it can have absolutely no impact on the years before the Court, since the decision will be the same in any event—no deficiency.

Petitioner nevertheless urges us to conduct a trial, make findings of fact, and resolve issues that will in no way affect our decision (which in any event will be no deficiency) in order that differences between the parties over interest computations relative to 1965 and 1966 may be resolved.

---

[10] For purposes of this case respondent concedes only that the net operating loss deduction that may be carried back from 1968 and 1969 to the years here in issue (1965 and 1966) is sufficient to eliminate the deficiency determined. However, as a result of negotiations at the administrative level the parties apparently both agree that at the minimum there will remain (after considering 1965 and 1966) nearly $50 million in net operating losses (most of which is attributable to 1969) to be carried to future years.

[11] This alone is sufficient to distinguish *Church of Scientology of Hawaii v. United States*, 485 F.2d 313 (9th Cir. 1973).

The size of the 1968 net operating loss is relevant to the differences the parties have over interest.[12] Yet it is clear that section 6214(b) directs us to look at "the taxes of other years" only to the extent it is "necessary to correctly determine the amount of [the] *deficiency*" (emphasis added) before us.[13] There is no reason for us to look at 1968 to determine the 1965 and 1966 deficiencies before us. These deficiencies are zero in any event. We would be deciding issues relative to 1968 solely for purposes of interest computation, a subject over which we clearly have no jurisdiction. *Standard Oil Co. v. McMahon,* 244 F.2d 11 (2d Cir. 1957); *Commissioner v. Kilpatrick's Estate,* 140 F.2d 887 (6th Cir. 1944). We believe that it would be clearly inappropriate to look at 1968, not for purposes of redetermining the deficiency before us, but for purposes of determining interest.

Our inability to look at 1968 would (even if we resolve the issues in 1965 and 1966 for interest computation purposes) only partially resolve the controversy over interest.[14] But, even aside from this problem, we do not believe it would be appropriate for us to conduct a trial relative to the years 1965 and 1966, to resolve issues that can have absolutely no bearing on the deficiency solely to resolve interest issues when we have no jurisdiction over interest.

We recognize that this may be far from a perfect solution to the problems confronting petitioner. It might be more convenient for the parties if we had jurisdiction over restricted interest.[15] We are not without sympathy relative to the practical problems

---

[12] Petitioner received interest on the refund attributable to the 1968 loss from the end of the loss year (Dec. 31, 1968) until the refund was paid. If the correct amount of the 1968 loss is less than claimed, a portion of this interest must be repaid. Additionally, the size of the 1968 loss will affect the amount of pre-carryback interest due on any 1966 deficiency between Dec. 31, 1968 (the year of the 1968 loss), and Dec. 31, 1969 (the year of the 1969 loss).

[13] While the jurisdictional bar of sec. 6214(b) relates only to determining an underpayment or overpayment for years not before us, the section nevertheless expresses a policy that, even aside from the jurisdictional bar, supports our analysis. Petitioner's right to litigate the size of the 1968 and 1969 losses as to future years is fully protected. See sec. 6511(d)(2)(B).

[14] It would determine the *size* of any deficiency to which restricted interest would be applicable. However, since the size of the 1968 loss is relevant to the interest correctly payable to petitioner from Dec. 31, 1968, until the date it received a refund attributable to the 1968 loss, differences over interest would continue to divide the parties.

[15] See dissenting opinion in *Standard Oil Co. v. McMahon,* 244 F.2d 11, 14 (2d Cir. 1957). We do have jurisdiction over interest in connection with transferee liability (sec. 6901) and jeopardy assessments (sec. 6861(c)).

petitioner has so ably detailed in its brief, but we take the statute as we find it.

*Decision will be entered for the petitioner.*