T.C. Memo. 2000-121


UNITED STATES TAX COURT


THERON R. LIVINGSTON, SR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


MICHELE D. LIVINGSTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 8691-97, 15040-97.          Filed April 6, 2000.


H pleaded guilty to criminal tax evasion for taxable
year 1990, admitting to a specified amount of unreported
income as determined through R's reconstruction of H's 1990
income by the net worth method in the criminal proceeding.
Subsequently, for purposes of establishing H's civil tax
liability for taxable years 1989 and 1990, R determined H's
unreported income by relying directly on the criminal net
worth summary. R's 1989 net worth computation assumed that
H had a zero opening net worth and was based on inconsistent
inclusions of H's and W's incomes, assets, and expenditures.
For taxable year 1990, H and W filed a joint Federal
income tax return. In her original petition, W sought
innocent spouse relief under former sec. 6013(e), I.R.C.
After the trial in this case, former sec. 6013(e), I.R.C.

was repealed and replaced by sec. 6015, I.R.C. Subsequently, W filed administrative elections for relief pursuant to sec. 6015(b) and (c), I.R.C. R made a full concession of W's liability under sec. 6015(c), I.R.C., but made no determination under sec. 6015(b), I.R.C. W seeks judicial determination of her entitlement to relief under sec. 6015(b), I.R.C.

1. <u>Held</u>: for taxable year 1989, respondent's determination of H's unreported income through use of the net worth method is not sustained.

2. <u>Held</u>: for taxable year 1990, respondent's determination of H's unreported income through use of the net worth method is modified.

3. <u>Held</u>: for taxable year 1990, respondent having fully conceded W's tax liability pursuant to her election under sec. 6015(c), I.R.C., the question of her entitlement to relief under sec. 6015(b), I.R.C. is moot.

<u>Ramsey R. Taylor</u> and <u>G. Norris Watson</u>, for petitioner in docket No. 8691-97.

<u>Howard B. Teller</u>, for petitioner in docket No. 15040-97.

<u>Richard A. Stone</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>: In these consolidated cases, respondent determined deficiencies, additions to tax, and an accuracy-related penalty in petitioners' Federal income taxes as follows:

| Year | Deficiency | Additions To Tax and Penalty | | |
|------|-----------|-------------|----------|----------|
| | | Sec. 6651(a)(1) | Sec. 6654 | Sec. 6663 |
| Theron Livingston, Sr. | | | | |
| 1989 | $3,424 | $856 | $232 | — |
| Theron and Michele Livingston | | | | |
| 1990 | $24,676 | --- | — | $18,507 |

After concessions,[1] the issues for decision are:

(1) Whether Theron Livingston, Sr. (petitioner husband), had $14,690 of unreported income in taxable year 1989 as determined by respondent's income reconstruction using the net worth method; (2) whether petitioners had $77,372 of unreported income in taxable year 1990 as determined by respondent's income reconstruction using the net worth method; and (3) whether respondent's full concession as to the 1990 tax liability of Michele Livingston (petitioner wife) pursuant to section 6015(c) renders moot the question of petitioner wife's entitlement to relief pursuant to section 6015(b).[2]

---

[1] Petitioner husband concedes that for taxable year 1989 additions to tax apply pursuant to secs. 6651(a)(1) and 6654 to any underpayment for such year as determined by the Court. Also, for taxable year 1990, petitioner husband concedes the imposition of the fraud penalty pursuant to sec. 6663 on any underpayment as determined by the Court.

[2] Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

The parties have stipulated some of the facts, which are incorporated in our findings by this reference.  When the petition was filed, petitioner husband was incarcerated in Federal prison in Montgomery, Pennsylvania, and petitioner wife resided in Severn, Maryland.

Petitioners were married on May 20, 1989, and remained married at all times relevant to these cases.  Petitioner wife has a daughter, Itesha, and petitioners have a son, Theron, Jr.

During the years in issue, petitioner husband was self-employed in a disc jockey business.  Petitioner wife was employed by Merrill Lynch in Severn Park, Maryland, performing various clerical duties.

On or about June 30, 1989, petitioners purchased a 1983 Nissan Maxima in the name of petitioner wife.  Of the $4,240 total purchase price, they paid $2,240 cash and financed the balance.  On or about October 5, 1989, petitioners traded in the 1983 Maxima for a 1984 BMW in the name of petitioner wife.  Of the $6,860 total purchase price, they paid $3,000 cash, received $1,200 net credit for the trade-in, and financed the balance.

On February 28, 1990, petitioners and Itesha were involved in an automobile accident.  Petitioners settled three personal

injury cases in connection with the accident.  Their net
settlement proceeds were as follows:

| | |
|---|---|
| Theron Livingston, Sr. | $3,333 |
| Michelle Livingston | 3,523 |
| Itesha Livingston | 667 |
| Total | 7,523 |

On or about August 10, 1990, petitioners used these
settlement proceeds to purchase a 1988 Alfa Romeo Milano in the
name of petitioner wife.  Of the $10,547 total purchase price,
they paid $7,547 cash and financed the balance.

For taxable year 1989, petitioner husband filed no Federal
income tax return, and petitioner wife filed a Federal income tax
return with a filing status of married filing separately,
reporting wages of $12,290.  For taxable year 1990, petitioners
filed a joint Federal income tax return.  The Schedule C, Profit
or Loss From Business, included as part of the 1990 joint return
reported $10,300 gross receipts and $632 net income from
petitioner husband's disc jockey business.  Petitioners' 1990
joint return also reported petitioner wife's wages of $12,356.

On June 11, 1994, petitioner husband signed a plea agreement
in which he agreed to plead guilty to income tax evasion pursuant
to section 7201 for taxable year 1990 and to a May 1993 offense
for distribution of cocaine base.  Petitioner husband was
sentenced to 60 months of incarceration on the tax evasion count,

to run concurrently with a 70-month sentence on the drug-related count.

In the plea agreement, petitioner husband agreed that "the amount of additional income attributable to * * * [petitioner husband] in 1990 is $63,610 and the additional amount of tax owed to the United States is $20,659".

The statement of facts in the criminal proceeding contained a summary of the net worth analysis (hereinafter referred to as the criminal net worth computation), as follows:

| Particulars | 12/31/89 | 12/31/90 | 12/31/91 |
|---|---|---|---|
| Total assets | [1]$7,445 | [2]$82,791 | $86,643 |
| Less: Total liabilities | 2,600 | 6,100 | 6,100 |
| Net worth | 4,845 | 76,691 | 80,543 |
| Less: Prior years net worth | -0- | 4,845 | 76,691 |
| Increase in net worth | 4,845 | 71,846 | 3,852 |
| Plus: Expenditures | [3]16,511 | [4]18,591 | 35,337 |
| Less: Deductions | [5]6,000 | [6]27,412 | 19,858 |
| Corrected taxable income | 15,356 | 63,025 | 19,331 |
| Reported taxable income | -0- | (585) | 1,091 |
| Understatement | 15,356 | 63,610 | 18,240 |

[1] This amount comprises a $608 checking account balance and the 1984 BMW.

[2] This amount comprises a $423 checking account, the 1984 BMW and the 1988 Alfa Romeo Milano, and "investments" of $65,000 in a music shop, Steady Beat Records.

[3] This amount comprises personal living expenses of $13,477, including expenditures made jointly by petitioner husband and petitioner wife, as well as an item characterized as "non-deductible personal loss 1983 Maxima" in the amount of $3,034.

[4] This amount comprises of personal living expenses, income taxes paid, and Social Security taxes paid.

[5] This amount represents personal exemptions.

[6] This amount comprises $12,356 of wages for petitioner wife, $6,856 for petitioners' settlement of their injury claims from the automobile accident, and $8,200 for personal exemptions.

After petitioner husband's plea agreement, Gim Baker (Baker), a revenue agent for the Internal Revenue Service (IRS), was assigned to examine petitioner husband's 1989 Federal income tax liability and petitioners' 1990 joint Federal income tax return. Baker issued letters to both petitioners, requesting them to provide documentation such as income records and expense records. In response, petitioner husband sent Baker a letter stating that it was impossible for him to collect the necessary documents while he was incarcerated and requesting that the civil examination be postponed until his projected release in 2000. Petitioner wife--whose liability related only to taxable year 1990--refused to provide the requested information until the IRS showed her what information it had in its possession.

In conducting the civil investigation, Baker relied on the criminal net worth computation rather than performing an independent income reconstruction for either year in issue. Except for her unsuccessful attempt to procure information from petitioners, Baker conducted no investigation regarding petitioners' finances and did not verify the numbers contained in the criminal net worth summary. Instead, she copied the criminal net worth summary that was attached to petitioner husband's plea agreement, using identical numbers to calculate the increases in net worth for each of the taxable years 1989 and 1990 but making certain modifications. For instance, in drafting the notice of

deficiency for 1989, Baker reduced from $16,511 to $9,845 the amount of personal expenditures contained in the 1989 criminal net worth computation[3] and disallowed the $6,000 personal exemption that had been allowed in the criminal net worth computation. The net result of these two changes was a decrease in the amount of petitioner husband's unreported income. In drafting the notice of deficiency for 1990, Baker increased by $12,421 the offset allowed for income reported on the return, but omitted the $27,412 of "deductions"--comprising $12,356 for petitioner wife's wages, $6,856 for petitioners' settlement of their injury claims from the automobile accident, and $8,200 for personal exemptions--that had been allowed in the criminal net worth computation, resulting in an increase in the amount of petitioner husband's unreported income.[4]

---

[3] The record does not reveal the basis upon which Baker determined this lesser amount of personal expenditures.

[4] The net worth analyses included in the 1989 and 1990 statutory notices of deficiency were as follows:

| Particulars | | 12/31/89 |
| --- | --- | --- |
| Understatement of income | $14,690 | |
| Total assets | | $7,445 |
| Less: Total liabilities | | (2,600) |
| Net worth | | 4,845 |
| Less: Prior years net worth | | ( -0-) |
| Increases in net worth | | 4,845 |
| Plus: Expenditures | | 9,845 |
| Understatement of income | | 14,690 |
| (Increase in net worth plus expenditures) | | ====== |

(continued...)

OPINION

Taxpayers are required to keep adequate books or records from which their correct tax liability can be determined. See sec. 6001. In the absence of adequate books and records, the Commissioner may reconstruct a taxpayer's taxable income by any reasonable method. See Holland v. United States, 348 U.S. 121, 131 (1954). The courts have long recognized the net worth method as a reasonable method. See id.; Manzoli v. Commissioner, 904 F.2d 101 (1st Cir. 1990), affg. T.C. Memo. 1989-94 and T.C. Memo. 1988-299; United States v. Sorrentino, 726 F.2d 876 (1st Cir. 1984); Estate of Mazzoni v. Commissioner, 451 F.2d 197 (3d Cir. 1971), affg. T.C. Memo. 1970-144 and T.C. Memo. 1970-37.

Under the net worth method, taxable income is computed by reference to the change in the taxpayer's net worth during a

---

[4](...continued)

| Particulars | 12/31/90 |
|---|---|
| Understatement of income | $77,372 |
| | |
| Total assets | $82,791 |
| Less: Total liabilities | ( 6,100) |
| Net worth | 76,691 |
| Less: Prior years net worth | ( 4,845) |
| Increases in net worth | 71,846 |
| Plus: Expenditures | 18,591 |
| Less: Income reported on return | (13,006) |
| Understatement of income (Increase in net worth plus expenditures less income reported on return) | 77,372 ====== |

year, increased for nondeductible expenses such as living expenses, and decreased for items attributable to nontaxable sources such as gifts and loans. The resulting figure may be considered to represent taxable income, provided: (1) The Commissioner establishes the taxpayer's opening net worth with reasonable certainty; and (2) the Commissioner either shows a likely source of unreported income or negates possible nontaxable sources. See United States v. Massei, 355 U.S. 595, 595-596 (1958); Holland v. United States, supra at 132-138; Brooks v. Commissioner, 82 T.C. 413, 431-432 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985).

The use of the net worth method requires "the exercise of great care and restraint" to prevent a taxpayer from being "ensnared in a system" which is hard for the taxpayer to refute. Holland v. United States, supra at 129. The taxpayer's opening net worth is of critical importance. "The importance of accuracy in this figure is immediately apparent, as the correctness of the result depends entirely upon the inclusion in this sum of all assets on hand at the outset." Id. at 134. "If the opening statement is not substantially reliable, the whole intricate house of cards falls." Estate of Phillips v. Commissioner, 246 F.2d 209, 213 (5th Cir. 1957). Respondent must establish the opening net worth with reasonable certainty. See London v. Commissioner, T.C. Memo. 1998-346; Campfield v. Commissioner,

T.C. Memo. 1996-383, affd. without published opinion 133 F.3d 906 (2d Cir. 1997).

Respondent's 1989 Income Reconstruction for Petitioner Husband

Respondent's net worth computations in this civil proceeding were derived directly from the criminal net worth computation. In each case, respondent assigned petitioner husband a 1989 opening net worth of zero. The record does not reveal respondent's factual basis, if any, for this determination.[5] Given that petitioner husband was self-employed in a disc jockey business in 1989, however, an opening net worth of zero is suspect.

Respondent's 1989 net worth computation purports to relate solely to petitioner husband's unreported income, yet is based on inconsistent inclusions of petitioner husband's and petitioner wife's incomes, assets, and expenditures. For example, the 1989 net worth computation counts among petitioner husband's assets two automobiles that petitioners bought together in the name of petitioner wife. Similarly, the 1989 net worth computation takes

---

[5] As far as is revealed by the record, petitioner husband was under criminal investigation for tax evasion only for taxable year 1990. If so, the only relevance of the 1989 criminal net worth computation would be to establish petitioner husband's 1989 ending net worth, which was used as his opening net worth in the 1990 criminal net worth computation. Because the 1989 opening net worth would be of little or no consequence to the 1990 criminal net worth computation, it is inferable that respondent merely assumed a zero opening net worth for 1989, without any investigation. Such an inference is not contradicted by any evidence in the record.

into account various expenditures made jointly by petitioner husband and petitioner wife. The 1989 net worth computation effectively treats these asset purchases and other joint expenditures as being financed by petitioner husband's unreported income. The 1989 net worth computation does not, however, account for assets and income attributable to petitioner wife. In particular, it fails to account for petitioner wife's after-tax income of $10,239, which exceeds the $9,845 of expenditures reflected in respondent's net worth computation as included in the 1989 notice of deficiency.[6]

In addition, petitioner wife credibly testified that petitioners received approximately $3,000 to $4,000 in wedding

---

[6] In an attempt to overcome the failure of the 1989 criminal net worth summary to account for assets and income of petitioner wife, respondent argued for the first time at trial that the 1989 notice of deficiency understated petitioners' 1989 personal expenditures. On brief, respondent asserts for the first time that petitioners' 1989 expenditures exceeded $20,000. Respondent contends that this sum includes an indeterminate amount of expenditures (relating either to petitioners jointly or else to petitioner wife) for which respondent admits there is no documentation in the record, instead basing his contentions on various assumptions. Respondent has never sought an increased deficiency for 1989 based on any such increased amount of expenditures and has never sought to amend his pleading in this case. We will not consider this issue that was raised for the first time at trial. See Vetco, Inc. v. Commissioner, 95 T.C. 579, 589 (1990). In any event, even if we were to consider this issue, the newly asserted amount of joint personal expenditures would not cure the fundamental defects and internal inconsistencies of the 1989 net worth computation, as described in the text above.

gifts in 1989.  This testimony is corroborated by bank records reflecting petitioners' numerous small deposits of cash and checks shortly after their wedding.  Petitioner wife also testified that at the time of her marriage in 1989, she had at least $400 in two bank accounts.  She testified that her grandmother used funds placed under her guardianship after the death of petitioner wife's mother to help pay for Itesha's private Christian schooling.  The record also indicates numerous other instances of gifts or loans to petitioners from family and friends.

In sum, the 1989 net worth computation is premised on an apples-and-oranges comparison of petitioner husband's opening net worth (unreliably assumed to be zero) and petitioners' joint ending net worth, counting petitioners' joint assets and expenditures to petitioner husband's disadvantage, while failing to count petitioner wife's 1989 income--upon which she has already paid Federal income tax--or separate assets, which were available to fund petitioners' joint expenditures.

Taxpayers may not avoid the imposition of legally due taxes by concealing facts, but neither may the Commissioner base his determination on a "'strong underlying element of guesswork.'" Jacobs v. Commissioner, T.C. Memo. 1974-73 (quoting Polizzi v. Commissioner, 265 F.2d 498, 502 (6th Cir. 1959)).  Taking into consideration the warnings in Holland v. United States, 348 U.S.

at 121, we believe that the 1989 net worth computation is so unreliable as to negate any presumption of correctness.  As in Jacobs v. Commissioner, supra, with regard to taxable year 1989, respondent has failed to "show the correct amount of petitioner's reconstructed taxable income or [to] provide any basis for estimating it."  See also Gallo v. Commissioner, T.C. Memo. 1983-367.  Accordingly, this issue is decided for petitioner husband.

Respondent's 1990 Income Reconstruction for Petitioners

For taxable year 1990, by his criminal plea petitioner husband explicitly admitted that he had unreported income of $63,610, as determined by respondent's 1990 criminal net worth calculation, which was predicated on an opening net worth of $4,845.  Petitioner did not appear at trial to refute his prior admission.  Cf. Toushin v. Commissioner, T.C. Memo. 1999-171.

Petitioner husband's admission is strong evidence of the validity of the 1990 criminal net worth computation, and consequently of the 1990 civil net worth computation, which was derived directly therefrom.  Petitioner husband's admission in the criminal proceeding does not collaterally estop him, however, from challenging the specific deficiency amount in this proceeding, because "the determination of an exact liability was not essential to the judgment, a prerequisite to the application of the doctrine of collateral estoppel."  Moore v. United States, 360 F.2d 353, 356 (4th Cir. 1965) (internal quotation marks

omitted); see <u>Wapnick v. Commissioner</u>, T.C. Memo. 1997-133; <u>Larson v. Commissioner</u>, T.C. Memo. 1993-188.

Petitioners have challenged respondent's determination for taxable year 1990 with credible evidence. Respondent's civil net worth analysis followed the criminal net worth analysis in imputing to petitioner husband a $65,000 "investment" in Steady Beat Records. Petitioner husband's mother testified credibly that she was the sole owner of Steady Beat Records, and that she, rather than petitioner husband, made the $65,000 investment. This testimony is corroborated by documentation that in 1990 she applied for the Maryland business license for Steady Beat Records and signed the lease agreement for its leased premises. In addition, a friend of the mother's testified credibly that she had lent the mother money for the investment.

As evidence that petitioner husband owned Steady Beat Records, respondent offered the testimony of George Harvell, petitioner husband's sometime acquaintance, who testified unconvincingly that petitioner husband had admitted to him these and other matters. We did not find George Harvell to be a credible witness.[7] Accordingly, we conclude and hold that

---

[7] In 1990, Harvell pleaded guilty to income tax evasion pursuant to sec. 7201. In exchange for his testimony against several people, including petitioner husband, the Government refrained from charging Harvell with cocaine distribution.

petitioner husband's 1990 understatement should be reduced by $65,000.

We also conclude that respondent's determination of petitioners' 1990 understatement should be reduced by the $7,523 in settlement proceeds that petitioners and Itesha received from their automobile accident.[8]

Petitioner Wife's Innocent Spouse Claim

In her original petition, petitioner wife sought innocent spouse relief under former section 6013(e). On May 21, 1998, a trial was held in this case. On July 22, 1998, section 6015 was enacted, replacing former section 6013(e), which was repealed generally as of the same date. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), (e)(1), 112 Stat. 734. On August 3 and 18, 1998, petitioner wife filed administrative elections pursuant to section 6015(b) and (c), respectively. On January 13, 1999, respondent notified petitioner wife that she is entitled to relief pursuant to section 6015(c) and mailed her a proposed

---

[8] The 1990 criminal net worth analysis did in fact reflect an offset of $6,856 for petitioners' settlement of their own (but not Itesha's) injury claims from the automobile accident. Respondent has offered no satisfactory explanation why he departed from this approach in failing to include any offset in the civil net worth analysis. Furthermore, in light of the fact that the entire $7,523 of settlement proceeds appears to have been included in petitioners' assets in both the criminal and civil net worth computations, it is appropriate to include an offset for the entire amount.

decision representing a concession that she has no liability for any amount of the deficiency or penalty in dispute.  Respondent made no determination whether petitioner wife qualifies for relief under section 6015(b).  With leave of the Court, petitioner wife amended her petition, requesting the Court to require respondent to make a determination under former section 6013(e) and/or section 6015(b).[9]

The controversy before the Court concerns petitioner wife's liability for the deficiency respondent determined for taxable year 1990.  Respondent's concession under section 6015(c) relieves petitioner wife of all liability for taxable year 1990 and resolves the controversy between her and respondent that is before us.  Cf. LTV Corp. v. Commissioner, 64 T.C. 589, 593 (1975).  A decision regarding petitioner wife's eligibility for relief under section 6015(b) would amount to an advisory opinion and would contravene the "sound principle of judicial administration that courts will not gratuitously decide complex

---

[9] On brief, petitioner wife does not press the issue of her entitlement to relief under former sec. 6013(e), and we deem her to have conceded it.  In any event, since the disputed tax liability arose before July 22, 1998, but remained unpaid as of that date, former sec. 6013(e) is no longer effective with respect to the instant case, which is governed instead by the provisions of sec. 6015.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(e)(1), 112 Stat. 734.

issues that cannot affect the disposition of the case before them." Id. at 595.

Petitioner wife suggests on brief that a decision as to her eligibility for relief under section 6015(b) could enhance her future efforts to petition this Court for an award of attorney's fees. It would be inappropriate to protract this proceeding to enhance an award of fees. See sec. 7430(b)(3). Moreover, any consideration as to whether petitioner wife is entitled to litigation and administrative costs, including attorney's fees, is inappropriate at this stage of these proceedings. Should petitioners desire to pursue this matter, they must comply with Rules 230 and 231.

Remaining contentions not addressed herein we deem irrelevant, without merit, or unnecessary to reach.

To reflect the foregoing and concessions by the parties,

Decisions will be entered
under Rule 155.