T.C. Memo. 2000-243

UNITED STATES TAX COURT

ROBERT L. AND JOANNE TAMMARO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22972-97.                    Filed August 7, 2000.

Robert L. Tammaro, pro se.

Michael D. Baker, for respondent.

MEMORANDUM OPINION

ARMEN, Special Trial Judge:  This matter is before the Court

on the motion filed by petitioner Robert L. Tammaro (petitioner)[1]

_____

[1]  Although the petition in this case was filed by both
Robert L. and Joanne Tammaro, only Robert L. Tammaro requests an
award of administrative and litigation costs.

for an award of administrative and litigation costs under section 7430 and Rules 230 through 233.[2]

After concessions by respondent,[3] the issues for decision are as follows:

(1) Whether respondent's position in the administrative and court proceedings was substantially justified. We hold that it was.

(2) Whether petitioner unreasonably protracted the court proceeding. In light of our holding as to the first issue, we need not address this second issue.

(3) Whether the administrative and litigation costs claimed by petitioner are reasonable. In light of our holding as to the first issue, we need not address this third issue.

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioner's motion. See Rule 232(a)(2). We therefore decide the matter before us based on the record that has been developed to date.

---

[2] Unless otherwise indicated, all sec. references are to the Internal Revenue Code in effect for the taxable years in issue. However, all references to section 7430 are to such sec. in effect at the time that the petition was filed. All Rule references are to the Tax Court Rules of Practice and Procedure.

[3] Respondent concedes: (1) Petitioner exhausted his administrative remedies, see sec. 7430(b)(1); (2) petitioner substantially prevailed, see sec. 7430(c)(4)(A)(i); and (3) petitioner satisfied the applicable net worth requirement, see sec. 7430(c)(4)(A)(ii).

Background

Petitioner resided in Cranbury, New Jersey, at the time that the petition was filed with the Court.

Petitioner is a certified public accountant who operated an accounting firm during the relevant period of 1990 through 1994. Also during that period, petitioner was involved in breeding and showing horses (the horse activity). Petitioner operated the horse activity as an S corporation under the name Equine Investment Properties, Inc. (EIP) during 1990 through 1993 and as a sole proprietorship during 1994.[4] Petitioner claimed net operating losses from the horse activity for 1990 through 1994 in the amounts of $45,839, $44,222, $36,162, $31,928, and $26,782. By comparison, petitioner reported gross receipts from the horse activity for 1990 through 1994 in the amounts of $4,100, $3,881, $4,635, $67, and $2,702.

---

[4] In addition to EIP, petitioner operated a horse activity by the name of Bob Tammaro QuarterHorses (BTQH). The record provides little about this activity. However, respondent's revenue agent determined the following about BTQH:

> BTQH has operated for most part as a Schedule F horse breeding and show activity since 1979. However, for years 1990-1993 taxpayer revised the original individual returns and changed BTQH from a Schedule F to a Schedule E-Farm and Horse Leasing activity in conjunction with EIP.

The revenue agent also found that BTQH had sustained losses in all years of operation.

Respondent initiated an audit of petitioner's income tax returns for 1990 through 1992. The audit was thereafter expanded to include petitioner's returns for 1993 and 1994.

By notice of deficiency dated August 29, 1997, respondent made the following determinations for the taxable years 1993 and 1994:

For 1993, respondent did not determine any deficiency in income tax, but he did determine an addition to tax under section 6651(a)(1) in the amount of $303 and an accuracy-related penalty under section 6662(a) in the amount of $756.

For 1994, respondent determined a deficiency in income tax in the amount of $3,784, an addition to tax under section 6651(a)(1) in the amount of $440, and an accuracy-related penalty under section 6662(a) in the amount of $785.

Respondent's deficiency determination was based on the disallowance of losses claimed from the horse activity. Although respondent disallowed such losses for both 1993 and 1994, no deficiency in income tax for 1993 resulted therefrom because respondent allowed a carry forward of the unused portion of a net operating loss (NOL) from 1990 that was attributable to petitioner's accounting practice. In contrast, respondent did not allow a carry forward to either 1993 or 1994 of losses from the horse activity claimed for 1990, 1991, and 1992. Again, although respondent disallowed such losses for 1990, 1991, and

1992, no deficiency in income tax resulted for any of those years because of the aforementioned NOL in 1990 attributable to petitioner's accounting practice.

Respondent disallowed the losses claimed by petitioner from the horse activity on the ground that such activity was not pursued with the requisite profit objective. See secs. 162(a), 212, 183; see also Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

In determining that petitioner's horse activity was not conducted with the requisite profit objective, respondent relied on findings in the revenue agent's report (RAR), including, in particular, the following: (a) That petitioner did not maintain a formal business plan or prepare projections on profitability or consider stop-loss points, that petitioner estimated losses, and that petitioner did not maintain accurate books and records of the activity, see sec. 1.183-2(b)(1), Income Tax Regs.; (b) that petitioner did not invest a significant amount of time and effort in the horse activity, relying in part on the fact that petitioner also owned and operated an accounting firm and owned and managed two rental properties, see sec. 1.183-2(b)(3), Income Tax Regs.; (c) that EIP did not own any assets with the potential to appreciate in value sufficient to overcome the losses sustained in the activity, see sec. 1.183-2(b)(4), Income Tax

Regs.;[5] (d) that petitioner did not report any profits with respect to his horse activity in any year of operation and that such losses extended for a period beyond a reasonable startup period, see sec. 1.183-2(b)(6) and (7), Income Tax Regs.; (e) that petitioner offset most of his net income from his C.P.A. practice, net rental income from outside parties, and other dividend and interest income with the horse activity losses, and that petitioner created net operating losses to be used to reduce future potential capital gains from the sale of petitioner's real estate properties; and (f) that petitioner realized significant personal and social benefit from the horse activity, see sec. 1.183-2(b)(9), Income Tax Regs.

Respondent's revenue agent also concluded that petitioner's activity was not engaged in for profit pursuant to the presumption under section 183(d) because the gross income derived from the horse activity did not exceed the deductions attributable to that activity for 2 or more of the most recent 7 consecutive taxable years. Specifically, the agent concluded

---

[5] In particular, the revenue agent determined that the real estate property used in the horse activity, which had appreciated in value since its purchase in the late sixties or the early seventies, was not owned by EIP, but rather owned personally by the taxpayer.

Further, the revenue agent determined that as of the end of 1995, petitioner's horses were worth just over $30,000 (compared to his losses for the activity to date that were well in excess of $175,000).

that EIP and BTQH were organizationally and economically interrelated and that for the purpose of section 183(d) they constituted one activity.

On November 26, 1997, petitioner filed a timely petition with the Court disputing the deficiency in tax for 1994, as well as the additions to tax and accuracy-related penalties for 1993 and 1994, as determined in the notice of deficiency. Respondent filed an answer on January 9, 1998.

On January 5, 1998, respondent's counsel mailed petitioner a letter requesting him to attend a conference and to produce relevant documents relating to the case on January 28, 1998. Petitioner did not appear for the January 28th conference. Rather, petitioner informed respondent's counsel that he was busy with the tax filing season and requested a conference at a later date. In March 1998 another conference was scheduled for June 1998.

On the day of the scheduled June conference, petitioner canceled the conference for the expressed reasons that it would be too burdensome for him to transport his records to respondent's office in Philadelphia and because he did not want to incur travel expenses for his representative, Theresa Thery (Ms. Thery). Ms. Thery is an employee at petitioner's accounting firm.

By notice dated August 12, 1998, the Court calendered petitioner's case for trial on November 2, 1998. Early in October 1998, petitioner and respondent entered into settlement negotiations. At the November 2, 1998, calendar, counsel for respondent advised the Court that a basis for settlement had been reached by the parties and requested 90 additional days to submit the decision document. On December 24, 1998, respondent filed a motion to restore the case to the general trial calendar, reporting that a disagreement had arisen between the parties regarding the tax computations for the income tax and net operating losses.

Petitioner's case was restored to the general calendar. By Notice dated June 15, 1999, this case was calendared for trial at the Court's trial session on September 7, 1999. The parties resumed settlement negotiations. Counsel for respondent determined that the hazards of litigation, as well as the cost of trying the case, warranted a concession by respondent of a small percentage of the losses attributable to the horse activity that had been disallowed in the notice of deficiency for 1993 and 1994 and that had been disallowed for 1991 and 1992. Respondent also determined that the hazards of litigation did <u>not</u> warrant any concession by respondent of the loss attributable to the horse activity that had been disallowed for 1990. Respondent's concession with respect to the small portion of the losses

claimed for 1991 through 1994, together with the carry forward of the 1990 NOL attributable to petitioner's accounting practice, eliminated the deficiency in income tax for 1994. Respondent's concession also resulted in no additions to tax and no accuracy-related penalties for 1993 and 1994.

Based on the belief that the parties had reached a new basis for settlement, respondent prepared a revised computation of petitioner's net operating losses for 1991 through 1994. Petitioner rejected the revised computation and refused to sign the decision document insisting that respondent allow him to claim the same percentage of the 1990 net operating loss that had been allowed for 1991 through 1994.

On September 2, 1999, respondent filed a Motion for Entry of Decision. In the motion, respondent requested the Court to enter a decision reflecting that there were no deficiencies in income taxes due from, nor overpayments due to, petitioner for 1993 and 1994 and that there were no additions to tax and no accuracy-related penalties due from petitioner for such years. Respondent's motion relied heavily on LTV Corp. v. Commissioner, 64 T.C. 589 (1975).

Petitioner opposed respondent's motion. In petitioner's view, respondent's concessions did not address what petitioner considered to be the real issue in this case, namely, the amount of the NOL attributable to the horse activity that would be

available as a carryover to post-docketed years; i.e., to 1995 and subsequent years. In opposing respondent's motion, petitioner relied heavily on McGowan v. Commissioner, 67 T.C. 599 (1976).

The Court entered an Order and Decision on September 29, 1999, granting respondent's motion for entry of decision and holding that it was in the interests of justice to accept respondent's unilateral concessions.

Petitioner thereafter filed his motion for administrative and litigation costs. In accordance with section 7430 and Rule 232, the decision entered on September 29, 1999, was vacated and set aside.

Discussion

We apply section 7430 as most recently amended by Congress in the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727-730. However, certain of the amendments made by RRA 1998 to section 7430 (regarding the reasonableness of costs, the type of recoverable costs, and other provisions that are not at issue herein) apply only to costs incurred after January 18, 1999. To the extent of the portion of the claimed costs incurred on or before January 18, 1999, we apply section 7430 as amended by the Taxpayer Relief Act of 1997 (TRA), Pub. L. 105-34, secs. 1285, 1453, 111 Stat. 1038-1039, 1055.

A. Requirements for a Judgment Under Section 7430

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may be awarded only if a taxpayer: (1) Is the "prevailing party"; (2) has exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding.  See sec. 7430(a) and (b)(1), (3).  Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430(a) only if a taxpayer: (1) Is the "prevailing party"; and (2) did not unreasonably protract the administrative proceeding.  See sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or administrative costs under section 7430.  See Rule 232(e).  Upon satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceeding.  See sec. 7430(a)(1) and (2), (c)(1) and (2).

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement.  See sec. 7430(c)(4)(A).

Respondent concedes that petitioner has satisfied the

requirements of section 7430(c)(4)(A).  Petitioner will nevertheless fail to qualify as the prevailing party if respondent can establish that respondent's position in the court and administrative proceedings was substantially justified.  See sec. 7430(c)(4)(B).

B.  <u>Substantial Justification</u>

The Commissioner's position is substantially justified if, based on all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably.  See <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988); <u>Sher v. Commissioner</u>, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).  In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact.  See <u>Pierce v. Underwood</u>, <u>supra</u>; <u>Rickel v. Commissioner</u>, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989).  A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person".  <u>Pierce v. Underwood</u>, <u>supra</u> at 565 (construing similar language in the Equal Access to Justice Act).  Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'".  <u>Maggie Management Co. v. Commissioner</u>, 108 T.C. 430, 443 (1997) (quoting <u>Pierce v. Underwood</u>, <u>supra</u> at 566 n.2).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that * * * [his] position was invalid at onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. We look to whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner took his position. See Maggie Management Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually concedes, or even loses, a case does not establish that his position was unreasonable. See Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, the Commissioner's concession does remain a factor to be considered. See Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by the Commissioner as of the date of the notice of deficiency. See sec. 7430(c)(7)(B). The position of the United States that must be examined against the substantial justification standard with respect to the recovery of litigation costs is the position taken by the Commissioner in the answer to

the petition.  See Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991), affg. an unpublished decision of this Court; Sher v. Commissioner, supra at 134-135.  Ordinarily, we consider the reasonableness of each of these positions separately.  See Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part and remanding on other issues T.C. Memo. 1991-144.  In the present case, however, we need not consider two separate positions because there is no indication that respondent's position changed or that respondent became aware of any additional facts that rendered his position any more or less justified between the issuance of the notice of deficiency (on August 29, 1997) and the filing of the answer to the petition (on January 9, 1998).

In order to decide whether respondent's position was substantially justified we must review the substantive merits of this case.

Respondent determined that petitioner's horse activity was not engaged in with a profit objective.  Thus, we inquire whether respondent had a reasonable basis in fact and law for determining that petitioner did not engage in his horse activity with an actual and honest objective of earning a profit.  See Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

The existence of the requisite profit objective is a question of fact that must be determined on the basis of the entire record.  See Benz v. Commissioner, 63 T.C. 375, 382 (1974).  In resolving this factual question, greater weight is accorded objective facts than a taxpayer's statement of intent.  See sec. 1.183-2(a), Income Tax Regs.  For purposes of determining whether a taxpayer had the requisite profit objective, profit means economic profit, independent of tax savings.  See Surloff v. Commissioner, 81 T.C. 210, 233 (1983).

The regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists.  These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or the taxpayer's advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation.  See sec. 1.183-2(b), Income Tax Regs.

No single factor, nor even the existence of a majority of factors, favoring or disfavoring the existence of a profit

objective is controlling.  See id.  Rather, the relevant facts and circumstances of the case are determinative.  See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).  Thus, we must decide whether it was reasonable for respondent to determine that applying the section 183 factors, on balance, petitioner's horse activity was not conducted with the requisite profit objective.

We think that respondent's position was sufficiently supported by the facts and circumstances in petitioner's case and the existing legal precedent.  See Pierce v. Underwood, 487 U.S. 552 (1988).  We note in particular the large amount of claimed losses compared to minimal gross receipts, the minimal amount of time devoted to the activity, and the number of years for which losses were claimed.  Given the facts, respondent reasonably relied upon existing legal precedent to conclude that petitioner's horse activity was not a for-profit activity.

Petitioner requests that we apply the rationale in Han v. Commissioner, T.C. Memo. 1993-386, to his case.  However, Han is distinguishable on several grounds.  In Han respondent had assigned the examination of a complex return to an inexperienced revenue agent who made highly complex tax adjustments without adequately developing the facts of the case or properly applying the law.  Subsequently, respondent fully conceded all major adjustments contained in the agent's RAR, including the agent's

determination of fraud. In addition, it took 26 months following the petition to file a stipulation of settled issues, and we held that nothing in the record explained the Commissioner's failure to settle the case on a timely and fair basis.

In this case, the record establishes that respondent's agent conducted a thorough examination of petitioner's horse activity including, contrary to petitioner's assertion, the 1993 and 1994 tax years. The revenue agent's RAR also establishes that he appropriately developed the applicable law. Further, although it took about 2 years for respondent to concede the case, the record indicates that such delay was not entirely attributable to respondent. In part, petitioner contributed to the delay by failing to attend scheduled meetings with respondent. Further, respondent conceded the case after two attempts at settling the case had failed. We do not think it was unreasonable for respondent to attempt to reach a more favorable settlement prior to conceding the deficiency.

Therefore, we hold that respondent has established that his position in the administrative and litigation proceedings was substantially justified because he acted reasonably given the legal precedent and the circumstances surrounding petitioner's case. Accordingly, petitioner is not entitled to recover administrative or litigation costs.

Based on the foregoing, we need not decide whether petitioner unreasonably protracted the court proceeding or whether petitioner's claimed costs are reasonable in amount.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.