T.C. Summary Opinion 2007-119

UNITED STATES TAX COURT

DONALD RAY HARTLEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2380-06S.                    Filed July 17, 2007.

Donald Ray Hartley, pro se.

<u>Lauren B. Epstein</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Petitioner fraudulently underpaid his Federal income taxes for 1992, 1993, and 1994 and subsequently agreed to the assessment of deficiencies for those years. Respondent then determined civil fraud penalties under section 6663. Despite petitioner's stipulation, as well as the record's independent demonstration that he filed fraudulent returns with intent to evade tax, petitioner contends that imposition of civil fraud penalties would be unfair. Thus, the issue for decision is whether respondent's penalty determination should be sustained. We hold that it should.

## Background

Most of the facts have been stipulated, and they are so found. We incorporate by reference the parties' extensive stipulation of facts and accompanying exhibits.

At the time that the petition was filed, Donald Ray Hartley resided in Jacksonville, Florida.

In early 1995, petitioner told his brother-in-law that he needed someone to help him file several years' worth of delinquent Federal income tax returns. Petitioner had not yet filed for those years because he knew he would owe money.

Petitioner's brother-in-law introduced him to a man named Robert Rudolph (Mr. Rudolph), who was then employed by the

Internal Revenue Service (IRS) as a tax auditor.  Mr. Rudolph told petitioner that he, i.e., Mr. Rudolph, could either prepare correct returns and petitioner could then pay tax, interest, and applicable penalties, or he could prepare returns that would generate refunds, but only if petitioner agreed to split the refunds with him.  Petitioner opted for the second alternative and agreed to file false returns.  Petitioner knew that if he filed false returns, he would be acting illegally.

Acting pursuant to the foregoing arrangement, petitioner filed returns with the IRS, fraudulently claiming, among other things:  Head of household filing status; the earned income credit; a dependency exemption for an individual who was not his dependent; dependent care expenses that were not paid by petitioner; a net loss from a nonexistent "Schedule C business"; and a net loss from farming a nonexistent strawberry farm.  As a result, petitioner received fraudulent refunds totaling $9,924.36.

Petitioner underpaid his taxes for the years at issue by a total of $9,918.  The underpayment of tax for each of the years in issue was due to fraud with the intent to evade tax.[2]

In June 1995, petitioner gave Mr. Rudolph approximately $2,116 from one of his refund checks.  Despite receiving

---

[2]  So stipulated.  But even without that stipulation, we would so conclude based on the overwhelming weight of the evidence.

additional refund checks, petitioner did not make any further payments to Mr. Rudolph because he knew that Mr. Rudolph was then under investigation by the authorities. Apparently so was petitioner.

In December 1999, petitioner pleaded guilty to one count of violating 18 U.S.C. sec. 201(c)(1)(A) (bribery of public officials), and the corresponding judgment was entered in April 2000. Petitioner was sentenced to 3 months' home detention and 3 years' probation; petitioner also agreed--as a condition of his probation--to cooperate with the IRS in the collection of "all outstanding taxes, interest, and penalties."

In April 2005, respondent sent petitioner a Form 4549, Income Tax Examination Changes, showing the proposed changes to petitioner's income tax returns for 1992, 1993, and 1994. The proposed changes resulted in a total balance due, including interest and civil fraud penalties under section 6663, of $39,645.20.[3] Petitioner objected to imposition of the fraud penalties but agreed to the adjustments related to the underpayments of tax.

While his objection to the fraud penalties was being processed, petitioner submitted a Form 656, Offer in Compromise (OIC), for all 3 tax years. In the OIC, petitioner offered to

---

[3] The interest owed was calculated only to May 25, 2005, and the penalty calculations were made only to Apr. 25, 2005.

pay $9,918.[4]  His reasons, as stated in the OIC, for thinking

that he should be entitled to relief from interest and penalties

included, inter alia:

> By agreeing to enter a plea * * * I spared the government
> the time and expense of indicting me.
>
> By entering into a plea agreement, I spared the government
> the time and expense of trying me.
>
>     *       *       *       *       *       *       *
>
> By completing my probationary period without serious
> incident, I spared the government the time and expense of
> re-sentencing and incarcerating me.

Petitioner also disputed his ability to pay, and he argued

that it would "create an economic hardship and * * * be unfair

and inequitable" to require him to pay the interest and penalty

portions of his potential liability.  Not surprisingly,

petitioner's OIC was rejected.

In response to petitioner's disagreement with the civil

fraud penalties, respondent mailed petitioner a second Form 4549.

This one showed an amount due of only $9,918 and specifically

excluded civil fraud penalties.  The Form 4549 noted that

interest would be calculated at the time of assessment.

Petitioner signed the Form 4549 and a Form 870, Waiver of

Restrictions on Assessment and Collection of Deficiency in Tax

---

[4] This amount represented the sum of the underpayments of
tax for the taxable years in issue.

(waiver), on July 15, 2005.  Tax and interest were assessed thereafter.

On October 13, 2005, respondent mailed to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 showing an "Amount Owed" of $11,525.97. Petitioner responded by mailing a check to respondent for $11,525.97 on or about October 20, 2005.

The issue of the underpayments of tax having been resolved, respondent mailed to petitioner on December 13, 2005, the notice of deficiency from which petitioner appealed to this Court.  In the notice, respondent determined civil fraud penalties under section 6663(a) for 1992, 1993, and 1994, in the amounts of $1,974, $3,206.25, and $2,258.25, respectively.

Petitioner contends that because he paid the "Amount Owed" listed on the Notice of Federal Tax Lien Filing, he should not have to pay any additional amount; he seeks to have us direct the IRS to withdraw the lien.  He also contends that it would be unfair to require him to pay any amount in addition to the underpayments of tax because paying such additional amounts would deprive him of all assets; he thus seeks relief from the civil fraud penalties and statutory interest.  We address petitioner's contentions in turn below.

Discussion

A.  The Federal Tax Lien

Petitioner asks us to direct the IRS to withdraw the tax lien currently in place for the taxable years 1992, 1993, and 1994.  He claims he paid his debt in full and complains that the lien remains.  However, in the context of this action for redetermination, we lack jurisdiction to consider, much less grant, the relief requested by petitioner.

The Internal Revenue Service Restructuring and Reform Act of 1998, 112 Stat. 685, Pub. L. 105-206, was enacted into law on July 22, 1998.  Section 3401 of that Act, 112 Stat. 746, grants this Court jurisdiction to review the Commissioner's determination as to the propriety of filing a notice of Federal tax lien under section 6320 or a proposed levy on property under section 6330.

In a collection review action, this Court's jurisdiction under sections 6320 and 6330 depends, in part, on the issuance of a notice of determination by respondent's Office of Appeals after the taxpayer has requested an administrative hearing following the issuance by respondent's collection division of either a final notice of intent to levy, see sec. 6330(a), or a notice of filing of Federal tax lien, see sec. 6320(a).  See Sarrell v. Commissioner, 117 T.C. 122, 125 (2001); Moorhous v. Commissioner,

116 T.C. 263, 269 (2001); Offiler v. Commissioner, 114 T.C. 492, 498 (2000); see also Rule 330(b).

Petitioner never requested an administrative hearing. Instead, he responded to the Notice of Federal Tax Lien Filing by mailing in a check. Thus, because petitioner never requested a hearing, respondent had no occasion to issue a notice of determination. In short, the petition in this case was filed in response to a notice of deficiency issued pursuant to section 6213(a) and not a notice of determination under section 6320 or 6330. Therefore, we may not, and we shall not, address the propriety of the filing of the lien in this case.[5]

B. The Notice of Deficiency

When petitioner first disputed imposition of the civil fraud penalties, the IRS bifurcated petitioner's potential liabilities into two parts: Underpayments of tax, the assessment of which was agreed to by petitioner when he signed the Form 4549 and the waiver in July 2005; and the civil fraud penalties, subsequently determined in the notice of deficiency sent to petitioner in December 2005. Our jurisdiction in the instant case is based on the notice of deficiency.

---

[5] Further on the subject of this Court's jurisdiction, it is clear that in an action for redetermination, such as the present one, matters involving statutory interest under sec. 6601 are not generally before us and will therefore not be considered. E.g., Bax v. Commissioner, 13 F.3d 54, 56-57 (2d Cir. 1993); Pen Coal Corp. v. Commissioner, 107 T.C. 249, 255 (1996); LTV Corp. v. Commissioner, 64 T.C. 589, 597 (1975).

Section 6663(a) provides that if any part of an underpayment of tax required to be shown on an income tax return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment that is attributable to fraud. The notice of deficiency determined that petitioner was liable for the 75-percent penalty based on the entire underpayment for each of the 3 taxable years in issue.

The Commissioner's determinations are ordinarily presumed to be correct, and generally the taxpayer bears the burden of proving otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, this is not the case when fraud is alleged. See sec. 7454(a). In that instance, the Commissioner bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b).

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Fraud is never presumed, but is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); see also Beaver v. Commissioner, 55 T.C. 85 (1970).

As previously stated, the Commissioner bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). In particular, the Commissioner must prove that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). In order to carry this burden, the Commissioner must prove, for each year before the Court, that (1) an underpayment of tax exists and that (2) a portion of the underpayment is due to fraud. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). In the instant case, respondent has met his burden and proven that imposition of the civil fraud penalty for each of the years in issue is appropriate.

The record in this case clearly supports the finding that petitioner's Federal tax returns for 1992, 1993, and 1994 were fraudulent. In this regard, the record includes an extensive stipulation of facts that not only details petitioner's efforts to commit fraud but also includes petitioner's express admission that he filed false returns with intent to evade tax. In short, petitioner filed fraudulent returns, concealing the fact that he owed taxes in an attempt to obtain refunds to which he was not entitled.

Section 6663(b) provides that if the Commissioner establishes that any portion of the underpayment is attributable to fraud, then the entire underpayment is treated as attributable to fraud, except with respect to the portion of the underpayment that the taxpayer establishes, by a preponderance of the evidence, is not attributable to fraud.  In this case, the entire underpayment of tax for each year was due to petitioner's fraud --petitioner admits as much--and thus we sustain the imposition of the 75-percent penalty on the entire amount of each year's underpayment.

As previously stated, petitioner does not dispute the fact that his returns for the years at issue were fraudulent, nor does he offer any evidence to show that the fraud penalty should be imposed on less than the entire underpayment for each year. Rather, petitioner expresses concern that he will suffer economic hardship if he is required to pay the penalties determined in the notice of deficiency and statutory interest.  He asks the Court to grant him "any relief to which [he] may be entitled by law, regulation, or equity."  In other words, petitioner audaciously asks the Court to relieve him of the consequences of violating the very laws and regulations that he now attempts (improvidently, we might add) to invoke.

As for relief based in equity, it is worth noting that petitioner is seeking to be put in the same position as he would

have been if he had simply filed his tax returns properly in the first place. Even if we were permitted to entertain arguments based solely in equity,[6] we would not sanction petitioner's egregious violation of the law by permitting him to avoid the consequences of his own choices; there are too many taxpayers who unintentionally run afoul of the Internal Revenue Code and yet are required to pay interest and applicable penalties to even consider relieving petitioner of liability on equitable grounds. Further, it was a condition of petitioner's probation that he cooperate with the IRS in the collection of all outstanding taxes, interest, and penalties; we are unclear on how petitioner is able to say he has satisfied that condition when he proposes that the penalties associated with his conduct be overlooked.

Petitioner is liable for the 75-percent civil fraud penalty as determined in the notice of deficiency, and no argument-- legal or equitable--persuades us otherwise.

To reflect our disposition of the disputed issue,

<u>Decision will be entered</u>

<u>for respondent.</u>

---

[6] "The Tax Court is a court of limited jurisdiction and lacks general equitable powers." <u>Commissioner v. McCoy</u>, 484 U.S. 3, 7 (1987).